STATE OF MAINE                           SUPERIOR COURT
PENOBSCOT, ss.                           CIVIL ACTION
                                         DOCKET NO. AP-08-025

PEGGY SMIST,

        Petitioner,

        v.                               **DECISION AND ORDER**

BOARD OF TRUSTEES FOR THE
MAINE PUBLIC EMPOYEE          ┌─────────────────────────┐
RETIREMENT SYSTEM,           │  FILED & ENTERED        │
                             │  SUPERIOR COURT         │
        Respondent.          │    MAY 1 8 2009         │
                             │  PENOBSCOT COUNTY       │
                             └─────────────────────────┘

Peggy Smist has filed a petition pursuant to M.R. Civ. P. 80C seeking review of

the decision of the Board of Trustees (Board) of the Maine Public Employees Retirement

System (MPERS). Oral arguments were held on March 24, 2009.

## BACKGROUND

By a decision dated September 11, 2008, the Board decided to discontinue Ms.

Smist's ongoing disability benefits that she was receiving due to hearing impairment.[1]

(R. at 25.2-10.) The Board based its decision upon a finding that she was able to engage

in substantial gainful activity. *See* 5 M.R.S. § 17907(2)(B) (2008). Ms. Smist has

appealed that decision to this Court.

Ms. Smist is 55 years old. (R. at 10.49.) She holds an Associate's Degree

qualifying her to be a medical secretary, which she acquired in 1973. (R. at 10.5.) In

1980, Ms. Smist began to work at Eastern Maine Medical Center (EMMC) as a medical

---

[1] The Board's decision indicates that Ms. Smist's benefits were not terminated outright but that she was placed in MPERS's "Actively Seeking Work Program." (R. at 25.2.) Counsel for the Board also confirmed this at oral argument and explained that this program requires Ms. Smist to apply for a certain number of positions each month and, if she complies, her benefits continue until employment is secured.

1

secretary, although she also worked as a cardiac monitor there at various times. (R. at 1.119, 10.50.) This work was primarily part-time because Ms. Smist was also involved in raising her family and seeking further education. (R. at 10.50.) In 1994, she completed her Bachelor's Degree in education. (R. at 10.5.) During the 1994-1995 academic year she worked as an Educational Technician and long-term substitute teacher in School Administrative District 34 and continued to work part-time at EMMC. (R. at 1.119, 10.5-6.) After the 1994-1995 academic year she did some substitute teaching and still continued to work at EMMC. (R. at 1.119, 10.51-52) In 1997, she began working as an Educational Technician at Hermon Elementary School and still continued to work at EMMC. (R. at 1.119, 10.6-7.) In 1998, she secured a position teaching fourth grade Hermon Elementary, where she continued to work until 2005. (R. at 1.119, 10.7-8.)

On April 1, 2003, Ms. Smist suffered profound irreversible sensorineural hearing loss (*i.e.*, practically complete hearing loss) in her right ear after hearing a popping sound while blowing her nose. (R. at 10.9-11.) This experience also limited hearing in her left ear for which she now uses a hearing aid. (R. at 10.11-12.) She continued to teach at Hermon Elementary; however, she had difficulties hearing students and had to rely on her students to indicate when announcements were made over the school's public address system. (R. at 10.13-14.) Some students would take advantage of her hearing loss in carrying out pranks, which caused her frustration and prompted complaints from parents. (R. at 10.15-16.) Despite these difficulties, Ms. Smist completed the 2002-2003 academic year teaching fourth grade and continued to teach fourth grade throughout the 2003-2004 academic year. (R. at 10.14-15.) In 2004, she also earned her Master's Degree in Literacy Education. (R. at 10.7.)

2

At the beginning of the 2004-2005 academic year, Ms. Smist moved to teaching first grade in a classroom with twelve students. (R. at 10.8.) She encountered complaints from the parents of her students when children in her class reportedly were discussing adult subject matters undetected by Ms. Smist due to her hearing impairment. (R. at 10.17-18.) She went on sick leave in January 2005. (R. at 10.8.) In July 2005 she began receiving disability benefits and resigned from Hermon Elementary. (R. at 10.8.)

Ms. Smist began part-time employment at Challenger Learning Center in August 2005. (R. at 10.26-27.) She worked there one or two days per week during the school year orienting children to the center's simulated space station. (R. at 10.26-27.) In December 2005, while still working at Challenger Learning Center, Ms. Smist also began working at a testing center where she would monitor persons taking standardized professional exams. (R. at 10.30-31.) During her employment at the testing center Ms. Smist has worked between twenty and thirty hours per week, although she testified before the hearing examiner in April 2008 that she was then only working one day per week due to reduced business at the testing center. (R. at 10.30.) She also indicated that she has been willing to work four or five days per week at the testing center when such work is needed. (R. at 10.53.) She eventually left her position at Challenger Learning Center in the summer of 2007. (R. at 10.29-30.)

Ms. Smist benefits from the use of a hearing aid and an "FM Transmitter" device, which has a receiver that can be placed close to a person speaking and broadcasts the sound through her hearing aid. (R. at 1.42, 1.111, 10.20.) With some benefit from these technological aids, Ms. Smist describes the ideal work environment in which she could

be successful as one with a quiet background with face-to-face interaction being limited to one-on-one situations. (R. at 10.35-39.)

Ms. Smist's family physician wrote a letter dated December 11, 2007 in which he stated that in his opinion she could work twenty to twenty-five hours per week with a day off between each workday. (R. at 1.132, 10.40.) Ms. Smist testified that she does not always have the luxury of a day off between workdays and that she is exhausted at the end of the day without the break. (R. at 10.41.)

MPERS suggested four jobs that they believed Ms. Smist was capable of doing, as evidence that she is able to engage in substantially gainful activity: administrative secretary, education specialist, education team coordinator, and utilities customer service representative. (R. at 1.154-167, 10.42-47.) Ms. Smist has contended that she is either unable to perform or unqualified for each of these positions. (R. at 10.42-47.)

## DISCUSSION

In the context of a petition pursuant to M.R. Civ. P. 80C, the court "review[s] the decision of the Board . . . for errors of law, abuse of discretion, or findings of fact unsupported by competent and substantial evidence in the record." *Kelley v. Me. Pub. Empls. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676, 682. "The party seeking to vacate an agency decision bears the burden of persuasion." *Id.* (quoting *Martin v. City of Lewiston*, 2008 ME 15, ¶ 9, 939 A.2d 110, 113). "When an agency concludes that the party with the burden of proof failed to meet that burden, [the court] will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference." *Id.* (quoting *Hale-Rice v. Me. State Ret. Sys.*, 1997 ME 64, ¶ 17, 691 A.2d 1232, 1237).

Once disability retirement benefits have commenced, cessation of those benefits may occur upon periodic review when:

> (1) an individual is no longer disabled, as determined by medical exams or tests; (2) an individual has become eligible for service retirement benefits; or (3) an individual can engage in substantially gainful activity.

*Id.* ¶ 20, 967 A.2d at 683. Ms. Smist's benefits were terminated pursuant to a determination by the Board that she is able to engage in substantially gainful activity.[2] The parties agree that in order to engage in substantially gainful activity, Ms. Smist would need to earn $22,538.96 annually.

This is not a case where there is a question as to the extent or permanency of the petitioner's disability. The sole issue before this Court is whether or not the record contains substantial evidence supporting the Board's decision that Ms. Smist is able to engage in substantially gainful activity. This makes this case distinguishable from many of the authorities cited by the petitioner. *See Anderson v. Bd. of Trs., Me. St. Ret. Sys.*, CARSC-AP-2008-00002 (Me. Super. Ct. Dec. 31, 2008), *reconsideration denied*, CARSC-AP-2008-00002 (Me. Super. Ct. Mar. 17, 2009); *Gail Richard*, Me. Pub. Empls. Ret. Sys. Appeal No. 2007-016 (July 15, 2008) (hearing officer's report); *John E. Balzer*, Me. State Ret. Sys. Appeal No. 2006-022 (2008) (hearing officer's second report).

*Steele v. Me. State Ret. Sys. (Steele II)*, SKOSC-AP-2007-00003 (Me. Super. Ct. Jan. 31, 2008), is the only case cited by the petitioner where the issue was the ability to

---

[2] Title 5 M.R.S. § 17907(2)(B) states:

> After the disability has continued for 5 years, the disability of the beneficiary must render the beneficiary unable to engage in any substantially gainful activity for which the beneficiary is qualified by training, education or experience. For purposes of this paragraph, the ability to engage in substantially gainful activity is demonstrated by the ability to perform work resulting in annual earnings that exceed $20,000 or 80% of the recipient's average final compensation at retirement, whichever is greater, adjusted by the same percentage adjustments granted under section 17806.

5

engage in substantially gainful activity. In that case, the Superior Court overturned MPERS's discontinuance of benefits because the only medical opinion in the record reflected continued disability on the part of the petitioner. *Steele v. Me. State Ret. Sys.* *(Steele I)*, SKOSC-AP-2007-00003 (Me. Super. Ct. Oct. 3, 2007). On MPERS's motion for reconsideration, the court vacated its prior order because it erroneously had evaluated whether the record contained substantial evidence supporting the petitioner's continuing disability rather than the petitioner's ability to engage in substantially gainful activity. *Steele II*, SKOSC-AP-2007-00003, at 5. The Law Court subsequently affirmed this in a memorandum decision. *Steele v. Me. Pub. Empls. Ret. Sys.*, 2008 Me. Unpub. LEXIS 169 (Me. 2008).

There is substantial evidence in the record now before the Court to support the Board's conclusions. The petitioner argues extensively that the record does not contain substantial *medical* evidence and that such is needed to support the Board's finding. (Pet.'s Brief at 4 & 9.) The Law Court recently noted in *Kelley v. Me. Pub. Employees Ret. Sys.*, 2009 ME 27, ¶ 20 n. 10, 967 A.2d at 683, that a medical examination is not even required to discontinue benefits "when the issue is whether one can engage in substantially gainful activity." Consequently, while *medical* evidence is certainly relevant to the Board's determination, the Board certainly may rely upon other evidence in the record.

In the present case, the record is replete with evidence as to the extent of the Ms. Smist's limitations. The Board does not contest the extent of her limitations but contends that she can engage in substantially gainful activity even with such limitations, which, based upon Ms. Smist's education and experience, could be accomplished by performing

fulltime work or substantial part-time work. The record shows that the petitioner has successfully worked 20-30 hours at a testing center. The record also demonstrates that petitioner has on occasion worked as many as five days in a week at the testing center when called on to do so. Although she has stated that she is exhausted after such work, she has done it. The Court notes that the standard is not whether a person with a certain limitations can work without fatigue beyond that of a person without those limitations. The standard is whether a person is *able* to engage in substantially gainful activity. The petitioner and her counsel have thoroughly presented the difficulties that a hearing impaired person faces in the workplace. This Court has no doubt but that the petitioner faces more significant challenges in the workplace than those whose ability to hear is not diminished. These challenges could permit one to fairly conclude from the evidence in the record that Ms. Smist is unable to engage in substantially gainful activity. However, the Board's decision need not be compelled to the exclusion of all other rational conclusions, it need only be supported by the record. The record does not compel a conclusion contrary to that of the Board; therefore, this Court must affirm the Board's decision.

## CONCLUSION

The record contains substantial evidence supporting the respondent's decision; therefore, the respondent's decision is hereby affirmed.

7

The entry is:

1. The respondent's decision is **AFFIRMED**.

2. This order is incorporated into the docket by reference pursuant to M.R. Civ. P. 79(a).

Date: May 1 Y, 2009

M. Michaela Murphy
Justice, Superior Court

A TRUE COPY
ATTEST:
CLERK

8

Date Filed __10/10/2008__ _____PENOBSCOT_____ Docket No. __AP--2008-25__
County

Action __RULE 80C APPEAL__

SPECIALLY ASSIGNED TO JUSTICE M. MICHAELA MURPHY

| | | |
|---|---|---|
| PEGGY SMIST | vs. | BOARD OF TRUSTEES FOR THE MAINE PUBLIC EMPLOYEES RETIREMENT SYSTEM |

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| DANIEL SIMONDS, ESQ 15 COLUMBIA STREET BANGOR ME 04401 | CHRISTOPHER L. MANN, AAG. OFFICE OF THE ATTORNEY GENERAL 6 STATE HOUSE STATION AUGUSTA ME 04333-0006 |

| Date of Entry | |
|---|---|
| 10/10/2008 | Petition for Review, Maine Rule of civil Procedure 80C filed. |