ENTERED JAN 1 4 2015

STATE OF MAINE
CUMBERLAND, ss

SUPERIOR COURT
CIVIL ACTION
Docket No. AP-14-35

JAW-CUM-01-06-15

JAMES E. MARLEAU,

Petitioner

v.

MAINE STATE BOARD
OF NURSING,

Respondent.

ORDER ON 80C APPEAL

STATE OF MAINE
Cumberland, ss, Clerk's Office

JAN 07 2015

RECEIVED

Before the court is petitioner's Rule 80C appeal of a decision of the State Board of Nursing ("the Board"). The Board imposed a warning, a three-year probationary period, and costs of the hearing on petitioner as discipline for unprofessional conduct. For the following reasons, the Board's decision is affirmed.

## Background

Petitioner James Marleau has been a registered nurse since September 2011. (R. at 14.) In March 2012, Marleau began working at Marshall Health Care—a long-term care facility for the elderly (R. at 15.) At Marshall, Marleau was allegedly involved in two incidents with patients for which he was disciplined by the Board. (R. at 15.) The relevant facts for each incident are described below. The patients are identified by their initials as "CT" and "MV".

Patient CT

Patient CT had cognitive impairments, and according to Marleau she was "sexually aggressive." (R. at 18.) Marleau testified that on multiple occasions CT attempted to grab his penis. (R. at 17.) CT's patient care plan included a note that

CT "likes male attention." (R. at 17.) Marleau interpreted this to mean that she had a baseline behavior of sexual inappropriateness towards male staff. (R. at 17.) Susan Weaver, a certified nursing assistant ("CNA") at Marshall confirmed that CT had a history of acting sexually towards males. (R. at 26.)

Weaver testified about an interaction with CT on November 7, 2012. (R. at 26.) On that day, Weaver told CT that she would go get the charge nurse because CT had a headache. (R. at 26.) After learning that Marleau was the charge nurse, CT became upset and told Weaver that she did not want him brought to her room. (R. at 26.) CT went on to state that Marleau had previously entered her room and fondled himself in front of her. (R. at 26.) Weaver did not personally witness any inappropriate behavior between CT and Marleau. Marleau denies that anything inappropriate occurred.

Patient MV

Patient MV was blind and also had cognitive impairments. (R. at 15.) According to Josee McFarlane, another nurse who worked at Marshall, MV was in a wheelchair and would often feel for people with her hands because she could not see. (R. at 27.) According to the testimony of the staff at Marshall, including Marleau, MV was generally not sexually aggressive or inappropriate with staff. (R. at 19, 28, 29, 32.)

On November 8, 2012, Marleau was involved in an incident with MV. According to McFarlane, Marleau was standing at a cart preparing medications for another patient when MV came up behind Marleau sweeping her arms back and forth. (R. at 28.) When she reached Marleau, she hung on to him. (R. at 28.) McFarlane observed this and removed MV from Marleau and locked MV's wheelchair so she could not bother Marleau again. (R. at 28.) Somehow, MV's

2

wheelchair became unlocked because a little while later, McFarlane noticed that she was again grabbing Marleau. (R. at 28.) As McFarlane was removing MV for the second time, Marleau made a comment that "she was at the right height." (R. at 28.) McFarlane interpreted Marleau's statement as an offensive sexual remark. (R. at 28.)

Becky Sue Guptill, a housekeeper at Marshall, also testified about the incident. She said she observed MV wheel up behind Marleau and put her hand up the back of his shirt. (R. at 29.) She overheard Marleau say, "look, she's coming around the front." (R. at 29.) Marleau then turned around to face MV and started running his fingers through her hair "in kind of a Mohawk fashion" and Marleau said "she's at the right height now." (R. at 29.) Guptill interpreted Marleau's actions as very inappropriate and sexual behavior and that his comment was demeaning. (R. at 29.)

Shannon Todd, Director of Nursing at Marshall at the time, testified about the subsequent investigation of the incident. As part of the investigation, he interviewed Marleau. (R. at 31.) During the interview, Todd testified that Marleau admitted that his comment was sexually inappropriate. (R. at 31.)

According to Marleau, he was fixing MV's hair because it was disheveled. (R. at 22.) The second time MV grabbed him, Marleau testified that she went for the drawstring on his pants. (R. at 22.) Marleau claims that when he said "she's at the right height" he meant that she was at the right height to touch his genitalia. When he told Todd that "it was sexually inappropriate" Marleau claims he was referring to MV touching him and not to his comment. (R. at 33.)

3

### The Board's Conclusions

In a written decision dated May 15, 2014, the Board concluded that Marleau "engaged in unprofessional conduct in violation of 32 M.R.S. § 2105-A(2)(F) by making inappropriate sexual comments about and gestures towards patient M.V. on November 8, 2012." (R. at 6.) The Board dismissed the allegations regarding patient CT. (R. at 6.)

### Procedural History

The Board initiated a complaint against Marleau by letter dated January 30, 2014. Marleau filed a brief written response on March 6, 2014.[1] The Board held an adjudicatory hearing on April 3, 2014 and issued an oral decision at the hearing. The Board subsequently issued a written decision on May 15, 2014, which also explained Marleau's appeal rights.

### Discussion

#### 1. Standard of Review

The court reviews decisions of an administrative agency "for errors of law, abuse of discretion, or findings of fact not supported by the record." *Save Our Sebasticook, Inc. v. Bd. of Envtl. Prot.*, 2007 ME 102, ¶ 13, 928 A.2d 736. "That the evidence supports two inconsistent conclusions does not prevent an administrative agency's finding from being supported by substantial evidence." *Jones v. Town of Warren*, 1997 ME 200, ¶ 3, 704 A.2d 1210. The party seeking review of the administrative agency's decision bears the burden of demonstrating that error to the court. *Kelley v. Me. Pub. Employees Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676.

---

1 Marleau acknowledged that his response was one day late. The Board did not exclude his statement.

## 2. The Board's Factual Findings

Marleau argues that the Board's factual findings are not supported by substantial evidence in the record. In its written decision, the Board found unprofessional conduct based on Marleau making inappropriate sexual comments and gestures towards patient MV. The Board's findings are supported by the testimony of witnesses McFarlane (R. at 28) and Guptill (R. at 29). Shannon's testimony that Marleau admitted the comment was inappropriate also supports the Board's findings. (R. at 31.) Although Marleau disagreed with these contentions, the court will not choose between two supported but inconsistent factual accounts on an 80C appeal. The Board's factual findings will not be disturbed.

## 3. The Board's Legal Conclusions

Having determined that the Board's factual findings are supported by the record, the only issue is whether the Board's conclusion that Marleau violated 32 M.R.S. § 2105-A(2)(F) based on those findings is proper. That section states:

> F. Unprofessional conduct. A licensee is considered to have engaged in unprofessional conduct if the licensee violates a standard of professional behavior that has been established in the practice for which the licensee is licensed.

32 M.R.S. § 2105-A(2)(F). The Board's rules list multiple examples of "unprofessional conduct" including, "[e]ngaging in behavior that exceeds professional boundaries including, but not limited to, sexual misconduct." 02-380 C.M.R. ch. 4, § 3(U) (2014).

Although Marleau's behavior does not qualify as "sexual misconduct," it was within the Board's discretion to determine that Marleau's behavior exceeded

5

professional boundaries. It goes without saying that making sexual gestures and comments to an incapacitated elderly patient is unprofessional behavior. Regardless of whether the patient was aware of Marleau's actions and comments, the behavior reflects poorly on the health care institution and the nursing profession in general. The Board did not commit legal error in disciplining Marleau.

The entry is:

The decision of the Maine State Board of Nursing is AFFIRMED.

Dated: January 6, 2015

Joyce A. Wheeler
Justice, Superior Court

Plaintiff-James E Marleau (Pro Se)
Defendant-Ronald Guay AAG

6