Majority: SAUFLEY, C.J., and ALEXANDER, MEAD, HJELM, and HUMPHREY, JJ.
Dissent: JABAR, J.
HJELM, J.
[¶ 1] Elizabeth T. Jalbert appeals from a judgment entered in the Superior Court (Kennebec County, Marden, J.) affirming the decision of the Maine Public Employees Retirement System (MPERS) Board of Trustees (the Board) to adopt the hearing officer’s recommended decision denying Jalbert’s application for disability retirement benefits. Because the record does not compel the conclusion that Jalbert has a mental or physical incapacity that “is expected to be permanent” and makes it “impossible to perform the duties of [her] *942 employment position,” 5 M.R.S. § 17921(1)(A)-(B) (2016), we affirm.
I. BACKGROUND
[¶ 2] The following facts, which are supported by competent evidence in the record, are drawn from the recommended final decision issued by the hearing officer and adopted by the Board. See Anderson v. Me. Pub. Emps. Ret. Sys., 2009 ME 134, ¶ 5, 985 A.2d 501.
[¶ 3] Jalbert was employed as a teacher at Regional School Unit No. 1 for twenty-four years, beginning in 1989. In 2004, Jalbert applied to MPERS for disability retirement benefits, claiming that she suffered from bipolar disorder. Although Jal-bert had received a positive employment evaluation that year, she alleged that her mental health condition adversely affected her ability to teach. In 2005, Jalbert withdrew her application for disability retirement benefits and continued teaching effectively despite her ongoing mental health conditions.
[¶ 4] In January 2012, Jalbert slipped on ice and fell twice, nine days apart, hitting her head each time. Jalbert was examined at an emergency room after each fall, and the physicians noted only minor head injuries. After the falls, however, Jalbert reported to several treatment providers that she was struggling with speech and concentration, and that her depression and anxiety had worsened. She was absent from work for most of the remaining school year. In February 2012, Jalbert was examined by a neurologist who diagnosed her with post-concussion syndrome exacerbated by her pre-existing anxiety and depression, and he recommended that she see a speech therapist.
[¶5] Jalbert returned to work in September 2012 with modified duties. Around that same time, Jalbert underwent formal neuropsychological testing, which revealed strengths in intellectual ability, problem solving, short term memory, and language skills, but weaknesses in some aspects of attention and concentration. In November 2012, Jalbert’s primary care physician provided her with a note excusing her from work based on her claim that she did not feel competent at her job. While on leave, Jalbert continued to see her primary care physician, neurologist, neuropsychologist, speech therapist, and mental health providers; and she received treatment for tinnitus, dizziness, and vision problems. Her official last date in service was April 10, 2013.
[¶ 6] In February 2013, Jalbert filed an application for disability retirement benefits with MPERS based on her diagnosed post-concussion syndrome, anxiety, and depression.[1] See 5 M.R.S. § 17925(1) (2013).[2] The Executive Director’s designee obtained extensive medical records from Jal-bert’s treatment providers. Those materials were then reviewed by a medical board comprised of eight physicians, see id.’, 5 M.R.S. § 17106(3)(D) (2016), which issued two reports in June 2013 analyzing the effect of Jalbert’s alleged health conditions on her ability to teach: the first report analyzed post-concussion syndrome, and the second report analyzed anxiety and depression. The Executive Director’s des-ignee ultimately denied Jalbert’s applica *943 tion, see 5 M.R.S. §§ 17921(1), 17924(1) (2016), and Jalbert appealed to the Board, see 5 M.R.S. § 17451 (2016).
[¶ 7] A hearing was held before a hearing officer in February 2014 and the evidence was finally closed in April 2014. Because Jalbert chose to follow an “unrestricted appeal process,” see 12 C.M.R. 94 411 702-2 § 6(2) (2014), the evidence presented to the hearing officer went beyond the voluminous medical records and June 2013 medical board reports already considered by the Executive Director’s designee, and included testimony from Jalbert, her daughter, and one of her colleagues; transcribed testimony of Jalbert’s neurologist; and additional medical records and responses to requests for information from six of Jalbert’s treatment providers.
[¶ 8] After the close of all the evidence, the hearing officer returned Jalbert’s appeal to the Executive Director for a reconsidered decision. See 12 C.M.R. 94 411 702-2 § 6(2)(B). The Executive Director consulted with the medical board, see id., which issued two additional reports in May 2014 stating its opinion that the cumulative evidence failed to establish the existence of significant functional limitations related to post-concussion syndrome, anxiety, or depression. A Deputy Executive Director then issued a reconsidered decision affirming the earlier decision of the Executive Director’s designee to deny Jalbert’s application for benefits and returned the matter to the hearing officer. See 12 C.M.R. 94 411 702-5 § 15(1) (2014).
[¶ 9] In the summer and fall of 2014, the parties filed post-hearing briefs with the hearing officer and commented on the hearing officer’s draft decision. After responding to the parties’ comments, in October 2014, the hearing officer issued a recommended final decision, see 5 M.R.S. § 17106-A (2016), which was supported by extensive findings of fact and concluded that Jalbert had not satisfied her burden of proving that her conditions made it “impossible to perform the duties of [her] employment position,” id. § 17921(1)(B). The hearing officer’s decision was based on the following key findings: medical records and other evidence contemporaneous with Jalbert’s head injuries .indicated that when she fell, the impacts were mild; objective testing showed that Jalbert’s mental functions were only minimally impaired; Jalbert’s decline in functional capacity was inconsistent with her diagnosis of post-concussion syndrome and was not sufficiently explained by her doctors; and Jalbert’s current alleged impairments closely resembled those alleged in her 2004 application for benefits.
[¶ 10] The Board concluded that the hearing officer’s decision was “supported by the record as a whole” and adopted it in full. See id. § 17106-A(1). Jalbert filed a complaint for review of the Board’s decision in the Superior Court, see 5 M.R.S. §§ 11001-11007 (2016); M.R. Civ. P. 80C, which affirmed the Board’s decision.. This appeal followed.
II. DISCUSSION
[¶ 11] Jalbert argues that the Board erred by concluding that she did not qualify for disability retirement benefits. To qualify for the benefits, Jalbert was required to prove that she has a mental or physical incapacity that (1) “is expected to be permanent,” and (2) makes it “impossible to perform the duties of [her] employment position.”[3] 5 M.R.S. §§ 17921(1), *944 17924(1). In particular, she contends that the evidence compelled the Board to grant her application for benefits and that the Board placed improper weight on the medical board’s reports.
[¶ 12] When the Superior Court acts in its appellate capacity pursuant to M.R. Civ. P. 80C, we review the decision of the fact-finding agency directly. See Rossignol v. Me. Pub. Emps. Ret. Sys., 2016 ME 115, ¶ 6, 144 A.3d 1175. “As the fact-finder, the Board has the authority to determine the weight to be given to the evidence, and we will not substitute our judgment for the Board’s.” Id. (citing 5 M.R.S. § 11007(3)). Additionally, because Jalbert had the burden of proof before the agency, “we will vacate the Board’s determination that [s]he failed to meet that burden only if the record compels a contrary conclusion to the exclusion of any other inference.” Id. (quotation marks omitted).
[¶ 13] Contrary to Jalbert’s contention, the record does not compel the conclusion that she met her burden of proving that she qualifies for benefits pursuant to sections 17921(1) and 17924(1). As the Board concluded in its final decision, the hearing officer’s findings are supported by competent evidence in the record, including reports from Jalbert’s emergency room visits in January 2012 describing her head injuries as “mild” and “minor,” and stating that the second fall did not result in any loss of consciousness; a neuropsychologist’s report from September 2012 stating that Jalbert was “performing quite well on a wide range of cognitive measures,” although she had some difficulty with concentration; reports from Jalbert’s neurologist stating that she was “doing better over time,” that she had done “quite well overall” in a cognitive assessment but lost points for fluency, and that he expected that Jalbert would fully recover and return to work; and a “speech therapy discharge summary” issued in February 2013 stating that Jalbert had “met her goals,” that her communication skills were “within functional limits with no evidence of word finding deficits or dysfluency,” and that she was “in a position to do what is required by her daily life.” Given this evidence, the Board was not compelled to determine that Jalbert met her burden of demonstrating eligibility for disability retirement benefits.
[¶ 14] Jalbert goes on to challenge the opinions reached by the medical board. In the portion of the hearing officer’s decision that explicitly analyzed whether Jalbert had satisfied her burden of proving a disability, the hearing officer cited to significant evidence from Jalbert’s own physicians but made only a brief reference to the medical board’s May 2014 report concerning post-concussion syndrome, which the hearing officer pointed out was partially corroborated by one of Jalbert’s physicians.[4] Title 5 M.R.S. *945 § 17106(4) (2016) governs the use of “medical evidence” and provides that “[t]he retirement system shall consider ... the medical board’s analysis in making a disability retirement determination.” Id. § 17106(4)(A); see also id. § 17106(4)(B) (acknowledging that the medical board may provide “medical evidence” in disability retirement benefit proceedings). Jalbert did not object to the hearing officer’s consideration of the medical board’s May 2014 opinions as evidence, although she had an opportunity to do so both in her post-hearing brief filed with the hearing officer in June 2014 and in her September 2014 comments on the hearing officer’s draft decision.[5] Therefore, although Jalbert argues that the Board erred in not rejecting the substance of the medical board’s opinion, to the extent that Jalbert’s argument is that the Board erred in considering the reports at all, the hearing officer and the Board did not err by doing so — and in fact they were required to take the medical board’s analysis into account when making the disability retirement determination.[6] *946 See id. § 17106(4)(A); see also Anderson, 2009 ME 134, ¶¶ 26, 28, 985 A.2d 501 (stating that the Board may consider reports of the medical board “as part of the record”).
[¶ 15] Beyond this, we are not persuaded by Jalbert’s explicit challenge, which is to the weight that might be assigned to the medical board’s reports. “[HJearing officers may accept, reject or determine the amount of weight to be given any information offered into evidence, including, but not limited to, medical evidence submitted by any of the parties to the appeal.” 5 M.R.S. § 17106 — A(3); see also id. § 17106(4)(B) (“Explicit or implicit preferential weight may not be afforded any medical evidence or source of evidence, whether provided by the retirement system, its medical board or contracted examiners, or by any member .... ”). Here, the Board’s decision to deny Jalbert’s application for benefits was based on an assessment, of the evidence that does not reflect legal error.
[¶ 16] Although the record contains evidence that could support a finding that Jalbert is disabled within the meaning of section 17921(1), the record, when considered as a whole, does not compel that determination. Accordingly, the Board did not err by denying Jalbert’s application for disability retirement benefits.
The entry is:
Judgment affirmed.

, Jalbert also alleged in her application that she suffered from diabetes, hypertension, and asthma. The Board ultimately denied benefits based on those conditions. Jalbert does not challenge that aspect of the Board's decision on appeal.

. Title 5 M.R.S. § 17925(1) has since been amended, though the amendments are not relevant in the present case. See P.L. 2015, ch. 392, § 1 (effective July 29, 2016) (codified at 5 M.R.S. § 17925(1) (2016)).

. We are unpersuaded by Jalbert’s argument that the Board erroneously failed to consider the combined effect of her physical and emotional conditions ini determining whether she was disabled. The Board expressly acknowledged that Jalbert's application was based on *944 "post-concussive syndrome and comorbid anxiety and depression," but ultimately denied her request for benefits. (Emphasis added.) This characterization of Jalbert’s argument demonstrates that the Board considered the combined effect of her conditions. See Hale-Rice v. Me. State Ret. Sys., 1997 ME 64, ¶¶ 10-11, 691 A.2d 1232.
Additionally, Jalbert's arguments in support of her assertion that the proceedings were tainted by bias are insufficient to overcome the presumption that the agency fact-finders acted in good faith. See Rossignol v. Me. Pub. Emps. Ret. Sys., 2016 ME 115, ¶ 4 n.3, 144 A.3d 1175.

. In a separate section of the decision, the hearing officer comprehensively described the reports submitted by the medical board in June 2013 and May 2014. Aside from the brief reference to the medical board's discussion about post-concussion syndrome noted in the text, however, the hearing officer did not adopt the medical board's opinions and assessments of the evidence as his own.

. Although the hearing officer t did not reference the medical board’s June 2013 reports in his discussion, we note that those reports were admitted in evidence without objection from either party.
Additionally, the hearing officer’s draft decision specifically stated, “The Medical Board’s memoranda are properly considered to be evidence that can call into question the validity of the Appellant’s expert medical evidence on any particular issue.” (Emphasis added.) In her comments on the decision before it became final, Jalbert did not challenge this statement despite having the opportunity to do so.

. Before 2009, section 17106 did not contain the current provisions governing the use of "medical evidence” in disability retirement proceedings, and the statute therefore did not require MPERS to consider the medical board's analysis when determining whether an applicant was disabled. See 5 M.R.S. § 17106 (2008). In a decision that applied that earlier formulation of the statute, we held that the medical board’s memoranda do not rise to the level of "prefiled testimony” that triggers the applicant's statutory right to cross-examine the medical board’s members. See Kelley v. Me. Pub. Emps. Ret. Sys., 2009 ME 27, ¶ 25, 967 A.2d 676 (discussing the statute governing "prefil[ed] testimony,” 5 M.R.S. § 9057(4) (2008), which has remained the same since Kelley was decided). In a separate decision that also applied the earlier version of section 17106, see Anderson v. Me. Pub. Emps. Ret. Sys., 2009 ME 134, ¶ 28, 985 A.2d 501, we held that information in a medical board’s report is part of the administrative record and may even be sufficient to defeat a disability retirement application. The Legislature subsequently amended section 17106 to add the provisions, noted in the text, that describe the medical board’s analyses as "medical evidence” and require MPERS to consider those analyses when making disability retirement determinations. See P.L. 2009, ch. 322 § 6 (effective Sept. 12, 2009) (codified at 5 M.R.S. § 17106(4) (2016)). The amendment, however, also added language stating, "The medical board is advisory only to the retirement system.” Id. That language is consistent with other statutory language that was in effect when we decided Kelley and Anderson, describing the medical board’s duties in terms such as "recommend,” "assist,” "inform,” and "advise.” Id.
As we have noted above, see supra n.5, Jalbert did not challenge the inclusion of the medical board reports as evidence in the administrative record, Further, she did not attempt to call the medical board’s members as witnesses or argue that she was entitled to cross-examine them. Additionally, she did not argue at the administrative level, and does not argue on appeal, that the reports — which are now statutorily treated as "medical evidence” — are "prefiled testimony” within the meaning of section 9057(4), Indeed, Jalbert affirmatively acknowledges in her brief that the Board was "allowed to consider” the medical board's reports when determining her eligibility for benefits, and challenges only the weight assigned to them. Because Jalbert has framed her argument in this way, we do not reach any question of whether medical board reports and memoranda are properly included in the record in the first place as evidence pursuant to section 17106(4) when an applicant is not given an opportunity to cross-examine the board's members, Cf. Ant *946 ler's Inn & Rest., LLC v. Dep’t of Pub. Safety, 2012 ME 143, ¶ 9, 60 A.3d 1248 (“[A]n argument, even one of constitutional. dimension, that is not raised before an administrative agency may not be raised for the first time on appeal.”),