2009 ME 134

Betheny C. ANDERSON

v.

MAINE PUBLIC EMPLOYEES
RETIREMENT SYSTEM.

Supreme Judicial Court of Maine.

Submitted on Briefs: Nov. 23, 2009.

Decided: Dec. 29, 2009.

Janet T. Mills, Attorney General, Christopher L. Mann, Asst. Atty. Gen., Office of the Attorney General, Augusta, ME, for Maine Public Employees Retirement System.

David H. Simonds, Esq., Bangor, ME, for Betheny Anderson.

Panel: ALEXANDER, LEVY, MEAD, GORMAN, and JABAR, JJ.

**ALEXANDER, J.**

[¶ 1]  The Maine Public Employees Retirement System (MPERS) appeals from a judgment entered in the Superior Court (Aroostook County, *Cuddy, J.*), which vacated a decision of the MPERS Board of Trustees (the Board) denying disability retirement benefits to Betheny C. Anderson. MPERS argues that although Anderson has shown that her impairments make it impossible for her to carry out her employment duties as an art teacher, she failed to prove that her incapacity is expected to be permanent, and therefore the Board properly denied her disability benefits, pursuant to 5 M.R.S. § 17921(1) (2008).[1]  We vacate the judgment of the Superior Court.

## I.  STANDARDS OF REVIEW

[¶ 2]  When we consider a judgment of the Superior Court, reviewing a decision of a state administrative agency pursuant to M.R. Civ. P. 80C, we follow the standards of review governing administrative appeals.  Thus, when the trial court has acted in an intermediate appellate capacity, we review directly the original decision of the fact-finding agency, without deference to the ruling on the intermediate appeal by the court from which the appeal is taken.  *Kelley v. Me. Pub. Employees Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676, 682; *York Ins. of Me., Inc. v. Superintendent of Ins.*, 2004 ME 45, ¶ 13, 845 A.2d 1155, 1159.

1.  Title 5 M.R.S. § 17921(1) (2008) states in relevant part:

    **1.  Disabled.** "Disabled" means that the member is mentally or physically incapacitated under the following conditions:

    **A.**  The incapacity is expected to be permanent;

    **B.**  That it is impossible to perform the duties of the member's employment position;

    **C.**  After the incapacity has continued for 2 years, the incapacity must render the member unable to engage in any substantially gainful activity for which the member is qualified by training, education or experience; and

    **D.**  The incapacity may be revealed by examinations or tests conducted in accordance with section 17926.

**[¶ 3]** A party seeking to vacate an agency decision bears the burden of persuasion on appeal. *Kelley,* 2009 ME 27, ¶ 16, 967 A.2d at 682; *Zegel v. Bd. of Soc. Worker Licensure,* 2004 ME 31, ¶ 14, 843 A.2d 18, 22. When an appellant had the burden of proof before the agency, and challenges an agency finding that it failed to meet that burden of proof, we will not overturn the agency fact-finding unless the appellant demonstrates that the administrative record compels the contrary findings that the appellant asserts should have been entered. *Kelley,* 2009 ME 27, ¶ 16, 967 A.2d at 682 (stating that the Court will reverse a finding of failure to meet a burden of proof "only if the record compels a contrary conclusion to the exclusion of any other inference" (quotation marks omitted)); *Quiland, Inc. v. Wells Sanitary Dist.,* 2006 ME 113, ¶ 16, 905 A.2d 806, 810.

## II. CASE HISTORY

**[¶ 4]** To qualify for a disability retirement benefit under the MPERS, an applicant bears the burden of proof to demonstrate that the applicant has a mental or physical incapacity that: (1) is expected to be permanent, and (2) makes it impossible to perform the duties of the applicant's employment position. 5 M.R.S. § 17921(1)(A), (B). The process begins when an employee files an application with the executive director of MPERS, who then obtains medical consultation(s) on each application. 5 M.R.S. § 17925(1)(A) (2008). The consultations must be objective and provided by physicians qualified to review the case by specialty or experience and to whom the applicant is not known. *Id.* If, after considering the medical consultants' recommendations, the executive director denies the application, the employee may appeal that decision to the MPERS Board of Trustees. 5 M.R.S. § 17451 (2008).[2] The Board's decision may be appealed to the Superior Court pursuant to section 17451(2) and M.R. Civ. P. 80C.

**[¶ 5]** In this case, the record and the Board findings of fact, which are supported by the record, indicate the following:

**[¶ 6]** Betheny Anderson was employed as an art teacher in the Caribou School Department from 1991 until February of 2006. Over the course of eleven years, beginning in approximately 1995, Anderson developed progressive pain throughout her body. Anderson had pain and numbness in her feet that would sometimes cause her to fall. This pain often caused Anderson to lose sleep, and she was "constantly fatigued." Anderson was absent from her job frequently because of her pain.

**[¶ 7]** In 2005, Anderson began treatment with her primary-care physician,

---

**2.** Title 5 M.R.S. § 17451 (2008) states:

**1. Decision of executive director.** Any person aggrieved by a decision or ruling of the executive director may appeal the decision or ruling to the board.

**A.** To appeal a person must apply in writing to the board within 30 days after receiving written notice of the executive director's decision or ruling.

**B.** In any appeal proceeding, the board may investigate and consider all issues of fact or law, including the reasons for the decision or ruling of the executive director.

**C.** The appeal proceeding is an adjudicatory proceeding within the meaning of chapter 375, subchapter IV.

**D.** The board shall complete the appeal proceeding within 90 days of receiving the written application for appeal.

**2. Decision of board.** Any person aggrieved by a decision or ruling of the board in an adjudicatory proceeding is entitled to judicial review of the decision or ruling in accordance with chapter 375, subchapter VII.

David Connor, M.D, after her joint pain caused her to leave work and go to the emergency room. Shortly thereafter, Anderson filed an application for disability retirement benefits, pursuant to 5 M.R.S. § 17925.

[¶ 8] Anderson's last day of work was February 9, 2006. Anderson left work early to see Dr. Connor because her limbs were too weak to perform her duties at school. At this visit, Dr. Connor noted that in addition to her physical ailments, Anderson was emotionally unstable, which he thought was primarily caused by stress from work. Dr. Connor then removed Anderson from her teaching position because he thought she "may be heading toward a psychological breakdown."

[¶ 9] Later in February of 2006, Dr. Connor diagnosed Anderson with chronic fatigue syndrome, fibromyalgia, and Charcot–Marie–Tooth disease, the latter being the cause of Anderson's falls. Dr. Connor reported that at this point, he thought Anderson "could work for about [twenty] hours a week with some modifications; such as not having to carry heavy equipment with her to different [classrooms]." Dr. Connor also prescribed an antidepressant and referred Anderson to a psychiatrist and a neurosurgeon.

[¶ 10] In March 2006, the executive director obtained reports from six medical consultants. Each consultant had been asked to review one of the bases for Anderson's claim of disability: depression; fibromyalgia; Charcot–Marie–Tooth disease; a basal cell carcinoma on her left shoulder; chronic fatigue syndrome; an anxiety disorder; and injuries stemming from a car accident. Based in part on the information provided in those consulta-

tions, the executive director denied Anderson's application for disability benefits on April 10, 2006. The executive director determined that Anderson's degenerative cervical spine disease did not make it impossible for her to do her job, and that there was no objective medical data to prove that she had fibromyalgia, Charcot–Marie–Tooth disease, or depression. Anderson appealed the decision of the executive director to the Board,[3] pursuant to 5 M.R.S. § 17451(1).

[¶ 11] During the spring of 2006, Anderson sought treatment from several doctors. In May, she was diagnosed with depression by her psychologist, Dr. Robert Morrison, and she consulted with Fadi Ajine, M.D., a rheumatologist. In addition, Anderson was evaluated by Carlyle Voss, M.D., who concluded that Anderson's impairments made it impossible for her to return to work. Throughout the spring and summer of 2006, Anderson submitted voluminous records and reports from these physicians to MPERS. She asked that all of the documents be considered in support of her appeal, in addition to the documents that had been previously presented to the executive director.

[¶ 12] Pursuant to 5 M.R.S. § 17106(3)(B) (2008), the Board designated a panel of three physicians, referred to as the "medical board," to assist it in considering the appeal. At the request of the Board, a medical board reviews the file of the applicant for disability retirement benefits and, as requested, may recommend additional medical review or recommend additional medical tests to obtain objective evidence of a permanent disability. *See Young v. Bd. of Trs. of Me. State Ret. Sys.*, 601 A.2d 86, 87 n. 4 (Me.1992).[4]

---

3. Only depression, fibromyalgia, and Charcot–Marie–Tooth disease were part of Anderson's appeal from the executive director's decision to the Board.

4. The Maine Public Employees Retirement System was previously called the Maine State Retirement System.

[¶ 13]   After reviewing all of the information submitted by Anderson, the medical board reported in September 2006 that her diagnosis of fibromyalgia was warranted.  It noted that the functional limitations associated with that condition would restrict Anderson to light or sedentary work on a full-time basis, but also noted that it was premature to determine whether those functional limitations would be permanent.  The medical board further reported that Anderson's diagnosis of depression was warranted, but concluded that diagnosis did not result in any functional limitations for Anderson.

[¶ 14]   A hearing on Anderson's appeal was held in October 2006, and the MPERS hearing officer permitted the parties to submit additional evidence and arguments into January.  In February of 2007, the hearing officer issued an opinion regarding Anderson's appeal, finding that Anderson's impairments from her major depression, fibromyalgia, and degenerative cervical spine disease *did* make it impossible for her to perform the duties of her teaching position, but that the matter needed to be remanded to the executive director to determine whether these impairments were expected to be permanent.

[¶ 15]   On remand, the executive director asked the medical board to perform its statutorily created obligation to review and consider Anderson's application and supporting documents.  In May 2007, after its review of the evidence, the medical board advised the executive director that the functional limitations described by Anderson would not likely be permanent.  Justifying its position, the medical board noted that: (1) there was "a paucity of objective medical data in the medical records" to support the view that Anderson's functional limitations would be permanent; (2) it did not believe that Anderson's psychopharmacological treatment was suffi-

ciently aggressive, given her symptoms; and (3) Anderson had shown signs of slow improvement.

[¶ 16]   On May 17, 2007, the executive director of MPERS concluded, based in part on the recommendation of the medical board, that Anderson's depression, fibromyalgia, and degenerative cervical spine disease did not result in an incapacity that was expected to be permanent.  Anderson again requested leave to appeal and submit updated medical information, which was granted.

[¶ 17]   During the spring of 2007, Anderson continued to meet with Dr. Connor and Dr. Morrison.  Dr. Connor noted in his report that Anderson's fibromyalgia appeared better, but the stress of her legal situation was causing her problems.  Dr. Morrison reported that Anderson was still in a fragile state of mind and that he did not believe she was capable of sustained employment as an art teacher despite her improvement in certain areas.  Nevertheless, Dr. Morrison did report to the Board that Anderson was making improvements, and that he was pleased with her progress.  In addition, a June 2007, letter submitted by Dr. Ajine stated that while Anderson was seen only once, in May 2006, her fibromyalgia syndrome was a permanent condition that would prevent her from returning to her job on a full time, full duty basis.

[¶ 18]   In August 2007, the medical board again advised the executive director that Anderson's impairments were not likely to be permanent.  The medical board had concerns related to a lack of objective data documenting why Anderson's doctors believed she could not perform her teaching job.  The medical board considered Anderson's functional limitations to be:  difficulty in interacting with others; difficulty with executive func-

tions; fatigue; and, limited endurance for completing a full work week.

[¶ 19] The executive director upheld the May 17, 2007, decision denying benefits, a decision that was affirmed by the Board on January 3, 2008. In its decision, the Board stated that although Anderson had shown that "the combination of impairments from her major depression and fibromyalgia made it impossible for her to do her duties of her position as an art teacher," her failure to pursue treatment options, in addition to her improvement with therapy, demonstrated that these incapacities are not likely permanent.[5]

[¶ 20] Anderson appealed the Board's decision to the Superior Court, pursuant to M.R. Civ. P. 80C. The Superior Court's opinion reviewed the history of the case and recognized that Anderson had the burden of proof to establish the elements of her disability claim before the Board. After acknowledging the proper standard of review of Board fact-findings, the court stated that: "the question presented is whether there is substantial evidence presented by the petitioner on the question of proving 'permanency' of her condition." This statement suggests that the court believed Anderson might prevail if she could demonstrate that she had presented "substantial evidence" to support her disability claim.

[¶ 21] After reviewing the evidence in the record related to permanency, the court concluded that the "petitioner has met her burden of proof, to the exclusion of any other inferences." Addressing the evaluation provided by the medical board, the court concluded that reliance on the report of the medical board amounted to a violation of due process of law. The court held that because the medical board report was not presented as testimony and was not subject to cross-examination by Anderson, its use in the contested disability proceeding was improper. In effect, the court concluded that the Board was required to disregard the statutorily authorized medical board report in any contested hearing.

[¶ 22] Based on its factual finding that there was "substantial and unrebutted evidence" to support Anderson's position and its conclusion that the Board improperly considered the medical board report, the court vacated the decision of the Board and remanded the matter to the Board for an award of disability benefits to Anderson.

[¶ 23] The Board filed a motion for reconsideration. The court denied the motion, concluding that (1) it had applied a proper standard of review once it determined that the only medical evidence on the issue of permanency was the evidence offered by Anderson, and (2) the Board should have rejected the report from the medical board because considering it was a violation of due process.

[¶ 24] After its motion for reconsideration was denied, the Board brought this appeal.

## III. LEGAL ANALYSIS

[¶ 25] Five days before the court issued its order denying MPERS's motion for reconsideration, we decided *Kelley*. *Kelley* discussed issues similar to those presented in this appeal, addressing both the proper standard for judicial review of evidence and fact-findings by the Board, and the proper role of the medical board reports in MPERS hearings and delibera-

---

**5.** Addressing Anderson's claim for disability based upon the reports of her cervical spine disease, the Board found that Anderson failed

to prove by a preponderance of the evidence that that disease makes it impossible for Anderson to return to her job.

tions relating to applications for disability retirement benefits.

[¶ 26] In *Kelley,* we held that MPERS, in deciding disability claims, could consider reports from its medical board, as authorized by statute, and that consideration of the information in such reports in reaching decisions did not amount to a due process violation or violation of any rights of confrontation or cross-examination. *Kelley,* 2009 ME 27, ¶¶ 24, 25, 967 A.2d at 684. Accordingly, the trial court erred in holding that the Board should not have considered the medical board reports in the Board's decision-making process.

[¶ 27] In its analysis of whether Anderson had produced sufficient evidence to compel a conclusion contrary to that reached by the Board, the court made two errors. First, it made a credibility determination that the evidence supporting Anderson should have been accepted by the Board. Second, it disregarded the Board's capacity to disbelieve that evidence or assign it lesser weight than contrary evidence. *See In re Fleming,* 431 A.2d 616, 618 (Me.1981). In concluding that the evidence compelled the Board to find for Anderson on the permanency issue, the court was substituting its judgment on fact questions for the contrary judgment reached by the Board. This was violative of 5 M.R.S. § 11007(3) (2008): "The court shall not substitute its judgment for that of the agency on questions of fact."

[¶ 28] As we emphasized in *Kelley,* findings of fact of the Board, and other administrative agencies, must be reviewed deferentially, and a court can reverse a finding of failure to meet a burden of proof only if the record compels a contrary conclusion to the exclusion of any other inference. *Kelley,* 2009 ME 27, ¶ 16, 967 A.2d at 682; *see also* 5 M.R.S. § 11007(3).

Here, the report of the medical board constitutes an evaluation questioning Anderson's evidence of permanency. With that information considered as part of the record, as we held it could be in *Kelley,* the record does not compel a conclusion contrary to the findings of the Board that Anderson had failed to meet her burden of proof to demonstrate that her incapacity was expected to be permanent.

[¶ 29] Even if the medical board report is put aside, the record includes other evidence that demonstrates that the Board was not compelled to conclude that Anderson had met her burden of proof. Anderson's medical evidence included indications that she was making some improvement. The record also includes evidence that Anderson could engage in, and was in fact engaging in, activities that were inconsistent with a condition of permanent disability. At the same time that Anderson left employment with the Caribou School Department, she began a three-year term on the Caribou Zoning Board of Appeals. In addition, while claiming to be permanently disabled, Anderson continued to pursue a master's degree, winning awards for academic performance. Further, she completed recertification courses for her teaching certificate, and she produced and sold art calendars on the Internet. She also wrote and published children's books.

[¶ 30] This evidence shows commendable initiative and effort. However, with all of this evidence in the record, neither the Superior Court nor this Court could conclude that the Board was compelled to find that Anderson's incapacity was expected to be permanent such that she was entitled to receive permanent disability benefits. Accordingly, we must vacate the judgment of the Superior Court

and remand the matter to the Superior Court with direction to affirm the decision of the Board.

The entry is:

Judgment vacated. Remanded for further proceedings consistent with this opinion.