STATE OF MAINE                          SUPERIOR COURT
KENNEBEC, SS.                           LOCATION: AUGUSTA
                                        Docket No. AP-14-37

                                    )
RHONDA TOTMAN-BERUBE,               )
                                    )
                Petitioner,         )       **ORDER ON PETITIONER'S M.R. CIV.**
                                    )              **P. 80C APPEAL**
        v.                          )
                                    )
MAINE PUBLIC EMPLOYEES              )
RETIREMENT SYSTEM,                  )
                                    )
                Respondent.         )
                                    )
                                    )

Petitioner Rhonda Totman-Berube appealed, pursuant to M.R. Civ. P. 80C, from

the Final Decision of the Board of Trustees ("Board") of the Maine Public Employees

Retirement System ("MainePERS or System") denying Petitioner disability retirement

benefits. Along with her appeal, Petitioner also moves to modify and correct the

administrative record arguing that the underlying hearing officers and Board erred in

determining Petitioner requested an unrestricted adjudicatory process.[1] For the reasons

discussed below, the Court denies Petitioner's M.R. Civ. P. 80C appeal as well as

Petitioner's motion to modify and correct the record.

## I.     Background

On November 17, 2010, Petitioner applied for disability retirement benefits due to

congenital renal defects, heart palpitations, anxiety, and menopausal syndrome. Record

("R.") at 1.6. On August 3, 2011, the MainePERS' Executive Director's Designee

---

[1] On November 5, 2014, the Court granted in part Petitioner's motion to modify and
correct the record by admitting only two out of work slips and an email requesting
the Court confirm receipt of Petitioner's motion to modify and correct the record.

("EDD") concluded there were no functional limitations associated with these conditions. R. at 1.412. Petitioner appealed that decision, and on September 29, 2011 James Smith, Esq. was appointed as hearing officer. *See* R. at 24.155.

A telephonic preliminary conference was held on December 19, 2011 with Petitioner, hearing officer Smith and a representative from MainePERS. R. at 21.2. In his report of the conference, hearing officer Smith stated that Petitioner "has requested an unrestricted hearing" and noted that if the parties "have any comments or objections regarding this Report and Order, they shall submit them on or before January 3, 2012." R. at 21.2-3.

Petitioner returned to work full time on December 27, 2011. R. at 28.2. On February 23, 2012, hearing officer Smith recused himself because he had previously worked with Petitioner and concluded a conflict could occur. R. at 22.1. The recusal stated, however, that "[t]he parties agreed…that the pre-hearing conference could be held, which it was as scheduled." *Id.* Mark Terison, Esq. was appointed as the new hearing officer.

On April 18, 2013, the System representative sent Petitioner a list of exhibits to be introduced at the hearing. R. at 28.1 On May 9, 2012, the hearing was held. R. at 33. During the hearing, Petitioner argued against the admission of additional evidence contending that she requested a restricted hearing. *E.g.* R. at 33.36. In support, Petitioner pointed to a report of the pre-hearing conference she prepared, which stated that Petitioner requested a restricted hearing. R. at 33.150. Petitioner's report is dated April 13, 2012, but was not circulated until the date of the hearing. R. at 33.154. Petitioner also argued that she did not receive hearing officer Smith's report of the pre-hearing

2

also argued that she did not receive hearing officer Smith's report of the pre-hearing conference until February, after the date to protest the determination of a restricted hearing had already passed. R. at 33.49. Petitioner claims this deprived her of the opportunity to object to the unrestricted nature of the hearing. R. at 33.50. The System's representative agreed that he did not receive a copy of the pre-hearing conference report "until a later date as well," but pointed out that Petitioner could have contacted the System or the hearing officer to object in a timely manner. *Id.* The System argued Petitioner only objected to the nature of the hearing after the System sent Petitioner additional information that supported its position. *Id.* During the hearing, Petitioner also testified that she returned to work in December, 2011.

Following the submission of additional filings and emails by Petitioner objecting to the unrestricted nature of the proceedings, hearing officer Terison issued an order finding that Petitioner requested an unrestricted appeal. R. at 43.2. The order explained that hearing officer Smith's report clearly stated that Petitioner requested an unrestricted appeal. R. at 43.1. It further noted that Petitioner was provided an opportunity to comment on or object to the report on or before January 3, 2012, but did not do so. *Id.* In addition, it stated that Petitioner submitted new medical information on February 23, 2012, which would not have been permitted for an expedited, restricted appeal. *Id.*

On July 17, 2012 the EDD affirmed her original denial, after a review of the complete record, including the hearing transcript. R. at 44.1. The parties filed simultaneous post-hearing briefs on August 28, 2012. R. at 54.1, 55.1. Hearing officer Terison also permitted the Petitioner and MainePERS to file reply briefs on September 14, 2012, and September 28, 2012, respectively. R. at 59, 63.

3

Subsequently, hearing officer Terison issued a Recommended Final Decision on December 21, 2012 arguing the Board should affirm the EDD's denial of disability retirement benefits to Petitioner. R. at 67.8. Petitioner timely submitted comments critiquing the Recommended Final Decision. R. at 75.

On March 11, 2013, the hearing officer transmitted an un-modified Recommended Final Decision to the Board and issued an order refusing to accept proof of an adverse employment action filed by the Petitioner because the evidentiary record closed months ago. R. at 80.1, 82. Subsequently, Petitioner filed a request for hearing prior to the issuance of a Final Decision, a request to take official notice of adverse evaluations, which allegedly contradict the hearing officer's determination that she suffered no adverse evaluations resulting from her incapacity, and a motion to disqualify hearing officer Terison on grounds of bias and misapplication of law. R. at 83.5, 86.1, 90.1.

On May 23, 2013, the Board remanded the case to hearing officer Terison to address Petitioner's assertion that she had a pending request for a hearing regarding the unrestricted nature of the May 9, 2012 hearing explaining that while "[t]he record is resplendent with instances where the Hearing Officer appears to have previously ruled upon the same issue(s)," Board counsel was unable to determine if Petitioner's December 31, 2012 email had been specifically addressed. R. at 103.1. Hearing officer Terison modified the Recommended Final Decision to address the Board's concerns and resubmitted the Decision without further change. R. at 104.1. Due to the "specific nature of the remand," hearing officer Terison did not permit a comment period for the parties. *Id.* The Board determined this was error and remanded the Decision, enabling the parties

4

to file comments by July 11, 2013. R. at 107, 108. Petitioner submitted comments on July 11, 2013. R. at 110.1-10. Hearing officer Terison against transmitted his Recommended Final Decision, without changes, to the Board on July 29, 2013. R. at 111.1.

Following a number of motions and appeals by Petitioner, Petitioner requested and was granted an opportunity for oral argument before the Board, not to exceed fifteen minutes. R. at 122.1. After argument, the Board issued its decision and order on October 10, 2013. R. at 125.1.

A. The Board's Decision

The Board's Decision first explained that Petitioner is presently employed as an office specialist with the Maine Workers' Compensation Commission and is admittedly able to perform the tasks assigned to her at work. R. at 125.4. The Board then explained that while Petitioner suffers from a congenital variation or abnormality in kidney development, it agreed with the assessment of urologist Michael R. Curtis, M.D., that "no urological diagnosis prevents gainful employment or current position." *Id.* The Board explained that while Petitioner only saw Dr. Curtis once and he was not one of her treating medical providers, it agreed with Dr. Curtis' assessment that she was not experiencing pain due to her kidneys. *Id.*

The Board further found that despite complaints of anxiety, Petitioner is, according to a November 6, 2008 note from John Smith, D.O., a "[v]ery high functioning individual." R. at 125.5. This note was repeated in Petitioner's history when she was treated by Diane Handler, P.A., on March 30, 2010 for migraine headache, as well as follow-up care for symptoms of anxiety. *Id.* P.A. Handler listed palpitations, anxiety,

5

and headache among her "impressions." *Id.* Subsequently, on April 7, 2010 David Frost, M.D., opined that the heart palpitations Petitioner suffered "sound more benign" and recommended she reduce her caffeine intake of five drinks or more per day. *Id.* Dr. Frost planned an "event monitor," but subsequently determined that "things looked quite normal" and determined that Petitioners' palpitations "would not affect employment" and could cite "no specific reason to suggest she is disabled." *Id.* The System's Medical Board reviewed the medical record and found evidence of anxiety, but still determined Petitioner was a "high functioning" individual with no functional limitations attributable to anxiety. *Id.* Similarly, it found no evidence that Petitioner's heart palpitations resulted in any functional limitations that would impair her ability to work. *Id.*

On August 31, 2010 Maylene Peralta, M.D., an endocrinologist, diagnosed Petitioner with menopausal syndrome, likely with underlying anxiety. *Id.* Nothing in Dr. Peralta's report to MainePERS, however, concerned any function limitations Petitioner may have suffered due to her condition. *Id.* To the contrary, Dr. Peralta found Petitioner's behavior, mood, speech, and thought were all "normal." *Id.* The System's Medical Board accordingly found nothing in the medical records demonstrated functional limitations connected to menopausal syndrome. R. at 125.6-7. Nevertheless, Petitioner was placed on an unpaid medical leave from December 2010 through December 27, 2011 due in part to menopausal syndrome. R. at 125.7.

On May 31, 2011 Dr. Frost commented that Petitioner should keep hydrated, but otherwise identified no specific cardiac cause or recommendation regarding the palpitations. *Id.* On June 1, 2011, James E. White, Ph.D., formally diagnosed Petitioner with "generalized anxiety disorder," but found no evidence of a thought disorder. *Id.*

6

Finally, the Board explained that on December 26, 2011, Petitioner was permitted to return to work by her family nurse practitioner for a 32 to 40 hour week with no lifting over fifty pounds or prolonged standing. *Id.* Petitioner conceded that except for a few materials for meetings, she is not required to lift in order to perform her job. *Id.*

Based on these findings of fact, the Board found no functional limitations making it impossible for Petitioner to perform the essential duties of her job due to renal congenital defects, menopausal syndrome, heart palpitations or anxiety. R. at 125.9-10.[2] In particular, the Board explained that Petitioner did not carry her burden to prove that it was impossible for her to perform her duties as an Office Specialist II due to her renal congenital defects. This is because Dr. Curtis unequivocally stated that "no urological diagnosis prevents gainful employment or current position." R. at 125.9. The Board explained that viewing the record in its entirety, including the fact that Petitioner continues to perform her job and has been able to do the tasks assigned to her at work, "the hearing officer could not conclude that her kidney condition and associated symptoms result in functional limitations that make it impossible for her to perform the essential duties of her job." *Id.*

Regarding menopausal syndrome, the Board determined that Petitioner's application "fares no better" because nothing in Dr. Peralta's opinion amounts to functional limitations making it impossible for Petitioner to work at her administrative office job and Petitioner has in fact continued to work at her job. *Id.* While the Board recognized that Petitioner "may have difficulties doing the job" she did not prove by a preponderance of the evidence that it was impossible. *Id.*

---

[2] The Board did not address other possible conditions because they were not raised in Petitioner's application for disability retirement benefits. R. at 125.9

In determining Petitioner's heart palpitations did not make it impossible for Petitioner to perform her job, the Board relied on Dr. Frost's opinion that the Petitioner's palpitations "would not affect employment." R. at 125.10. In particular, the Board cited to Dr. Frost's opinion that "things looked quite normal" and that Petitioner had "no rhythm abnormality to correlate with her perceived palpitations." *Id.*

Finally, although Dr. White diagnosed Petitioner with generalized anxiety, the Board relied on evidence describing Petitioner as a "high functioning" individual. *Id.* The Board explained that while Petitioner may experience stress at work, the record demonstrated that she "remains in service and is performing the essential duties of her job, accomplishing the tasks assigned." *Id.* Accordingly, the Board found that while Petitioner "may experience difficulty...that does not amount to impossibility" and denied her disability retirement benefits. *Id.*

Following the Board's Final Decision, Petitioner filed a motion for reconsideration, which the Board denied following five minutes of oral argument by Petitioner. R. at 130, 144.1, 173.2. The Board determined that Petitioner's motion for reconsideration merely restated her previous arguments, did not present relevant new evidence that was impossible for her to have presented earlier, and did not show any procedural, or other, errors of law. R. at 173.3. On May 23, 2014, Petitioner brought the present M.R. Civ. P. 80C appeal. R. at 176.1.

## II. Discussion

5 M.R.S. § 17924 governs Petitioner's qualification for disability retirement benefits. It provides that "a member qualifies for a disability retirement benefit if

8

disabled while in service and…before normal retirement age." 5 M.R.S. § 17294.

Section 17921(1) defines the term "disabled," in pertinent part, as meaning:

> [T]that the member is mentally or physically incapacitated under the following conditions:
>
> A. The incapacity is expected to be permanent; [and]
>
> B. That it is impossible to perform the duties of the member's employment position…"

Subsection 2 defines "employment position," in pertinent part, as "[t]he position in which the member is employed at the time the member becomes incapacitated…" 5 M.R.S. § 17921(2).

The Court reviews the Board's Decision for an abuse of discretion, error of law, or findings not supported by the evidence. *Uliano v. Bd. of Envtl. Prot.*, 2009 ME 89, ¶ 12, 977 A.2d 400 (citation omitted). "An administrative decision will be sustained if, on the basis of the entire record before it, the agency could have fairly and reasonably found the facts as it did." *Id.* (quoting *CWCO, Inc. v. Superintendent of Ins.*, 1997 ME 226, ¶ 6, 703 A.2d 1258). Where a petitioner challenges the findings in an administrative decision, the petitioner "cannot prevail unless [s]he shows that the record compels contrary findings." *Id.* (quoting *Kroeger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 8, 870 A.2d 566). "Inconsistent evidence will not render an agency decision unsupported." *Id.* (quoting *Seider v. Bd. of Exam'rs of Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551); *see also Dodd v. Secretary of State*, 526 A.2d 583, 584 (Me. 1987) ("The court may not substitute its judgment for that of the agency merely because the evidence could give rise to more than one result"). Furthermore, the court "will not overrule findings of fact supported by substantial evidence, defined as 'such relevant evidence as a reasonable mind might

9

accept as adequate to support the resultant conclusion.'" *Lewiston Daily Sun v. Maine Unemployment Ins. Comm'n*, 1999 ME 90, ¶ 7, 733 A.2d 344 (quoting *Crocker v. Maine Unemployment Ins. Comm'n*, 450 A.2d 469, 471 (Me. 1982)).

The party seeking to vacate an agency decision bears the burden of persuasion. *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 16, 967 A.2d 676. "When an agency concludes that the party with the burden of proof failed to meet that burden, we will reverse that determination only if the record compels a contrary conclusion to the exclusion of any other inference." *Id.* (quoting *Hale–Rice v. Me. State Ret. Sys.*, 1997 ME 64, ¶ 17, 691 A.2d 1232).

## A. Whether the Board Erred by Initially Assigning James Smith, Esq. as the Hearing Officer

Petitioner argues the Board erred by appointing James Smith, Esq. as the hearing officer in violation of 12 C.M.R. 94-411 ch. 702 § 8(2)(A). Pet.'s Brief, 6. Section 8(2)(A) provides that "an appeal will be assigned by the System to a hearing officer who has no personal or financial interest, direct or indirect, in the appeal or its outcome..." *Id.* If a party files a timely allegation of bias, prejudice, or personal or financial interest against the hearing officer, the officer will promptly determine whether to remove himself and will include that determination in the record. *Id.* at § 8(2)(B). When a hearing officer is removed, the System will assign the appeal to another hearing officer, who will continue the ongoing process, unless he determines it is necessary to start the process anew. *Id.* at § 8(2)(D).

Here, any error by the Board in initially assigning the matter to hearing officer Smith was properly dealt with by the officer's recusal. Hearing officer Smith recused himself because he had worked with Petitioner for six years at the Maine Worker's

10

Compensation Commission. R. at 22.1. Hearing office Smith noted, however, that "[t]he parties agreed...that the pre-hearing conference could be held, which it was as scheduled." *Id.* While Petitioner asserts hearing officer Smith erred in his report of the pre-hearing conference, there is no evidence that he harbored any bias against Petitioner that would cause him to improperly report the outcome of the pre-hearing conference. *See Friends of Maine's Mountains v. Bd. of Envtl Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689 (in order to show bias, a petitioner "must present evidence sufficient to overcome a presumption that the fact-finders, as state administrators acted in good faith"); *see also Dodd*, 526 A.2d at 584 (Me. 1987) (prohibiting the court from substituting its judgment for that of the agency merely because the evidence could give rise to more than one result). Furthermore, section 8(2)(A) does not require the hearing officer to recuse immediately or prohibit the officer from carrying out ministerial functions. Accordingly, Petitioner suffered no prejudice as a result of the Board's initial assignment of a hearing officer with a personal or financial interest in the proceeding.

B. Whether Hearing Officer Terison Committed an Abuse of Discretion in Finding Petitioner Requested an Unrestricted Adjudicatory Process

Petitioner contends there is compelling evidence proving she chose a restricted, as opposed to unrestricted, adjudicatory process. Pet.'s Brief, 19. In conjunction with this argument, Petitioner also moved to modify and correct the record to exclude the evidence introduced into the record after the pre-hearing conference was held on December 19, 2011. In support, Petitioner points to an August 25, 2011 letter she sent to the System's general counsel requesting the System lift the stay it imposed on her disability appeal. R. at 63.8. In that letter, Petitioner explains she is concerned about the possibility of losing her health insurance if her appeal is stayed. *Id.* Petitioner also points to testimony from

11

the May 9, 2012 hearing in which she claims she requested a restricted adjudicatory proceeding and her own notes of the pre-hearing conference. R. at 33.8-40, 33.150-4. Finally, Petitioner points to the recusal of hearing officer Smith implying that because he recused himself his pre-hearing report should not be relied upon.

MainePERS counters that the language of the December 19, 2011 pre-hearing conference report is clear that Petitioner "has requested an unrestricted hearing" and that Petitioner has given no reason to believe hearing officer Smith could not impartially perform the ministerial function of holding the conference and reporting the outcome accurately. R. at 22.2. MainePERS also contends that even if Petitioner did not receive the pre-hearing conference report until after January 3, 2013—the date to protest the order—she does not explain why she waited until the May 9, 2012 hearing to object. R. at 33.7. MainePERS further argues that while Petitioner's August 25, 2011 letter and a February 20, 2012 letter from Petitioner's attorney express a desire to speed up the appeal process, they do not constitute a request for a restricted hearing. MainePERS' Brief, 3-4. Furthermore, MainePERS argues the System introduced evidence that Petitioner was still working and performing the duties of her position, making it reasonable to conclude that Petitioner only objected to the unrestricted nature of the appeal when she was confronted with the new evidence the System representative sought to introduce on April 18, 2012. *Id.* at 4 (citing R. at 28.15). MainePERS also contends Petitioner's claim to a restricted hearing is belied by her submission of 333 pages of documents with medical evidence after the preliminary conference. *Id.* at 5. Finally, MainePERS argues the Board's adoption of hearing officer Smith's finding that Petitioner requested an unrestricted hearing turns on a credibility determination, which the court may not disturb. *Id.* at 6.

12

Here, although it appears hearing officer Terison erred in determining Petitioner submitted new medical evidence after the pre-conference hearing—as opposed to resubmitting old evidence—the Board's finding that Petitioner requested an unrestricted hearing was supported by substantial evidence because a reasonable person could accept hearing officer Smith's pre-hearing Report as adequate to find Petitioner requested an unrestricted hearing. As discussed above, hearing officer Smith's recusal was due to his prior working relationship with Petitioner. R. at 22.1. There is no evidence, however, that hearing officer Smith harbored any bias against Petitioner that would cause him to improperly report the outcome of the pre-hearing conference. *See Friends of Maine's Mountains v. Bd. of Envtl Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689 (in order to show bias, a petitioner "must present evidence sufficient to overcome a presumption that the fact-finders, as state administrators acted in good faith"). Furthermore, while Petitioner's August 25, 2011 and February 20, 2012 letters demonstrate a desire for an expedited appeal process, they do not compel a finding that Petitioner requested a restricted hearing at the pre-hearing conference. *See Uliano*, 2009 ME 89, ¶ 12, 977 A.2d 400. This is especially true where the finding of fact depends, at least in part, on the credibility of the Petitioner. *See Sprague v. Me. Unemployment Ins. Comm'n.*, 544 A.2d 728, 732 (Me. 1988). Accordingly, the Court finds the Board and hearing officer Terison's determinations that Petitioner requested an unrestricted hearing were supported by substantial evidence. *See Dodd*, 526 A.2d at 584. Because the Board and hearing officer Terison did not err by allowing Petitioner's case to proceed in an unrestricted manner, the court denies the remainder of Petitioner's motion to modify and correct the record.[3]

---

[3] The Court also denies Petitioner's motion to modify and correct the record to the

13

C. Whether Hearing Officer Terison Was Biased Against Petitioner

Petitioner claims hearing officer Terison acted with bias and abused his discretion by relying on the testimony of Dr. Curtis and Petitioner's fiancé in finding the appeal was unrestricted, while allegedly leading Petitioner to believe she was acting within her rights to proceed in a restricted manner through the hearing. She also asserts hearing officer erred by assigning greater weight to some evidence as opposed to other evidence. Pet.'s Brief, 15-16, 20-21 (citing R. 33.107, 32.5-9).[4]

To succeed in a claim of bias, the bias "must be alleged with sufficient particularity to have had an effect on the fairness of the governmental proceedings." *Baker's Table, Inc. v. City of Portland*, 2000 ME 7, ¶ 9, 743 A.2d 237. In *Hale v. Petit*, the Law Court held that mere allegations of bias without specification of how a party was actually prejudiced were insufficient. 438 A.2d 226, 234 (Me. 1981). In order to show bias, a petitioner "must present evidence sufficient to overcome a presumption that the fact-finders, as state administrators acted in good faith." *Friends of Maine's Mountains v. Bd. of Envtl Prot.*, 2013 ME 25, ¶ 23, 61 A.3d 689.

Here, Petitioner's allegations of bias regarding hearing officer Terison's reliance and assessment of the evidence are not sufficient to overcome the presumption of good faith on the part of hearing officer Terison. The Court will not substitute its judgment for

---

extent it seeks to introduce materials already contained in the record or to introduce unspecified materials not presented to the Court for review.
[4] Petitioner also asserts hearing officer Terison violated former section 15(2)(C) of the Board rules by not delivering his written comments to the parties when recommending his Final Decision to the Board for the second time. Pet.'s Brief, 41 (citing former 12 C.M.R. 94-411 ch. 702 § 15(2)(C); R. 111.2-111.9). The Record, however, demonstrates that hearing officer Terison did respond to Petitioner's comments in his cover letter to the Board, which was also delivered to Petitioner. R. at 111.1.

14

that of hearing officer Terison, especially on matters of weight and credibility. *See Dodd*, 526 A.2d at 584; *Sprague*, 544 A.2d at 732. As discussed in greater detail *infra* section II(F), the evidence in support of Petitioner's allegations do not demonstrate bias or compel a contrary result than that reached by hearing officer Terison. In addition, the record does not reveal any attempt by hearing officer Terison to mislead Petitioner as to her rights vis-à-vis the May 9, 2012 hearing. Instead, hearing officer Terison explained that aside from two items discussed at the hearing, the record—regarding new factual evidence—was closed, but the parties could still present new argument in support of their positions. *See* R. at 33.107-109.[5] Finally, hearing officer Terison did not err in relying on the hearsay testimony of Petitioner's fiancé because the Board rules do not prohibit reliance on hearsay evidence. 12 C.M.R. 94-411 ch. 702 § 11(6) ("Hearsay evidence shall not be excluded simply because of its hearsay nature. The hearing officer will determine the weight to be given to hearsay evidence"). Accordingly, Petitioner has failed to prove hearing officer Terison abused his discretion or acted with bias.

---

[5] Pursuant to this ruling, hearing officer Terison issued an order on March 11, 2013, the same day he issued his Recommended Final Decision, refusing to consider or admit evidence Petitioner submitted on February 21, 2013 showing her position as Office Specialist II was reclassified to Office Specialist I. R. 76.3, 80.1. Hearing officer Terison explained that the "evidentiary record in this matter closed months ago, and the parties have filed arguments and I have filed a Recommended Final Decision for comments. Under the circumstances, I cannot take the filing into account in considering [Petitioner's] comments concerning the Recommended Final Decision." R. at 80.1. Although hearing officer Terison could have admitted the evidence, his refusal to do so does not constitute an abuse of discretion or error of law.

D. <u>Whether Petitioner was Denied Due Process on her Motion to Reconsider</u>

Petitioner contends the Board erred by failing to properly notify the parties of its intent to hold oral argument on April 10, 2014 and improperly limiting oral argument to five minutes in a complex case. Pet.'s Brief, 17.

MainePERS responds that the applicable Board Rule, section 16(6)(A) does not contain a provision for oral argument upon a motion to reconsider, nor does Petitioner provide any citation in support of her position. MainePERS' Brief, 7. MainePERS further explains that Petitioner was repeatedly advised that oral argument was not an option, but in light of Petitioner's persistence, the Board Chairman permitted Petitioner five minutes to address the Board. *Id.* (citing R. at 137.1, 148.1, 150.2, 155.1, 157.1, 158.1, 160.1, 161.2, 162.3, 164.1, 166, 167.1, 168.1, 169.1, 170.1, 172.2).

Section 16(6)(A) of the Board Rules provides that:

> On request of a party…the Board may undertake reconsideration of a decision made…
>
> (1) When there is relevant new evidence that it was impossible for the party seeking to offer the evidence to have presented it earlier; or
>
> (2) to correct procedural error or other error of law that the Board determines would affect the outcome of the case.

12 C.M.R. 94-411 ch. 702 § 16(6)(A). Because the rule contains no provision requiring an opportunity for oral argument, the Board did not err by not providing Petitioner advance notice of the opportunity to argue and limiting that opportunity to five minutes. Furthermore, Petitioner was previously afforded the opportunity for oral argument, pursuant to the Board rules, on October 10, 2013, and has received a plethora of

16

opportunities to present her case. *See e.g.* R. at 166.1. Accordingly, Petitioner was not denied due process of law.

     E.   Whether the Medical Board Memoranda Were Properly Considered by the Board

Petitioner contends that "compelling evidence exists in the form of a highly conclusive, expert medical [evidence] that trumps the…opinion of the medical board." Pet.'s Brief, 23. In other words, Petitioner claims the Board erred by relying on the Medical Board's evidence because alternative expert medical evidence was presented. *Id.* at 23-26.

However, even where expert opinion is introduced, the factfinder may disbelieve it or assign it lesser weight than contrary evidence. *See Anderson v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 134, ¶¶ 26-27, 985 A.2d 501 (citing *In re Fleming*, 431 A.2d 616, 618 (Me. 1981). In addition, medical board memoranda exist "to inform the executive director and Board [of Trustees] as to the medical board's view on the existence of a disability that would entitle an applicant to benefits." *Kelley v. Me. Pub. Emps. Ret. Sys.*, 2009 ME 27, ¶ 25, 967A.2D 676 (noting that the Medical Board serves as "an advisor" to the System). As such, Medical Board memoranda evaluating an applicant's medical evidence may be considered as contrary medical opinion. *Anderson*, 2009 ME 134, ¶ 28, 985 A.2d 501.

Here, because agency findings of fact must be reviewed deferentially, the Court finds that hearing officer Terison, and the Board, did not abuse their discretion by considering the evidence presented by the medical board and according it significant weight. *See id.*

F. Whether Substantial Evidence in the Record Supports the Board's Decision

Petitioner contends the Board erred in denying her disability retirement benefits. Pet.'s Brief, 28-37, 42-51. In support Petitioner points to contrary evidence, which allegedly "proves" that it is impossible for her to perform the functions of her job. *See id.*

MainePERS contends that Petitioner has failed to prove there is no competent evidence supporting the Board's determination that she is not entitled to disability retirement benefits. MainePERS' Brief, 8.

As noted above, a party seeking review of an agency's findings must prove they are unsupported by any competent evidence." *Maine Baker's Ass'n v. Bureau of Banking*, 684 A.2d 1304, 1306 (Me. 1996). "It is not sufficient to demonstrate that, on the facts of the case, the decision maker could have made choices more acceptable to the Petitioner or even to a reviewing court." *Sager v. Town of Bowdoinham*, 2004 ME 40, ¶ 11, 845 A.2d 567.

Here, the Board's determination that Petitioner was not entitled to disability retirement benefits because it was not impossible for her to perform the functions of her job was supported by competent evidence. While Petitioner has pointed to contrary evidence supporting a finding that she is entitled to disability retirement benefits, this does not mean the Board's decision was not supported by substantial evidence. Substantial evidence is defined as relevant evidence that a reasonable mind might accept as adequate to support the resultant conclusion. *Lewiston Daily Sun*, 1999 ME 90, ¶ 7, 733 A.2d 344. In particular the following evidence supports the Board's determination that Petitioner was not entitled to disability retirement benefits:

18

### i. Renal Congenital Defects

While it is undisputed that Petitioner suffers from a renal congenital defect, the Board found the opinion of Dr. Curtis persuasive that this condition did not make it impossible for Petitioner to perform her essential job functions. *E.g.* R. at 125.4, 125.9-10. Furthermore, while Dr. Curtis was not one of Petitioner's treating medical providers and only examined her once, these facts do not render Dr. Curtis' assessment null or of definitively less value than another doctor.

### ii. Menopausal Syndrome

Similarly, while the Board did not dispute that Dr. Peralta diagnosed Petitioner with menopausal syndrome with underlying anxiety, the Board explained that it did not find Dr. Peralta's opinion demonstrated Petitioner suffered functional limitations making it impossible for her to perform the essential functions of her job. R. at 125.6-7.

### iii. Heart Palpitations

The Board relied on the opinion of Dr. Frost in determining that Petitioner's heart palpitations do not warrant disability retirement benefits. Dr. Frost explained that "things looked quite normal" and that Petitioner's palpitations "would not affect employment." R. at 125.5.

### iv. Anxiety

The Board did not dispute that Petitioner suffered from generalized anxiety disorder, but found the opinions of Drs. Smith and Peralta that Petitioner was normal and a high functioning individual persuasive in determining that her anxiety did not prevent her from performing the essential duties of her job. R. at 1.95-96, 125.7, 125.10, (R. at 1.95-96).

19

The Board also found each of its determinations were supported by the fact that Petitioner was working full time while hearing officer Terison was making his Recommended Final Decision. *See* R. 29.15, 33.148-54, R. 125.10.

Taking this all together, while the Board and the Court both acknowledge that Petitioner suffers difficulties in performing at least some of her essential job functions and that there is evidence in the record supporting a determination that Petitioner is entitled to disability retirement benefits, the record does not compel that result. In other words, the Board's decision was supported by substantial evidence and the Court will not substitute its judgment for that of the agency just because the Board could have found Petitioner was entitled to disability retirement benefits. *Sager*, 2004 ME 40, ¶ 11, 845 A.2d 567. Accordingly the Court denies Petitioner's M.R. Civ. P. 80C appeal.

## III. Conclusion

The Court denies the remainder of Petitioner's motion to modify and correct the record because the Board did not err in determining Petitioner requested an unrestricted adjudicatory process and proceeding accordingly. In addition, the Court denies the remainder of Petitioner's motion to modify and correct the record to the extent it seeks to include documents already contained in the administrative record or to add unspecified materials not presented to the Court for review.

The Court also denies Petitioner's M.R. Civ. P. 80C appeal because the Board did not commit any procedural or substantive errors and its denial of disability retirement benefits to Petitioner was supported by substantial evidence.

20

Pursuant to M.R. Civ. P. 79(a), the Clerk is hereby directed to incorporate this Order by reference in the docket.

Dated: March 12, 2015

M. Michaela Murphy, Justice
Maine Superior Court

| Date Filed | 5/23/14 | Kennebec County | Docket No. AP-14-37 | F |

Action: Petition for Review
80C

## J. Murphy

Rhonda Totman-Berube    vs.    Maine Public Employees Retirement System

| Plaintiff's Attorney | Defendant's Attorney |
|---|---|
| Rhonda Totman-Berube, Pro Se<br>PO Box 135<br>Augusta, ME  04330 | Christopher Mann, AAG<br>6 State House Station<br>Augusta, ME  04333-0006 |

Date of Entry

| | |
|---|---|
| 5/30/14 | Appeal of Final Decision and Order of Board of Trustees, filed 5/23/14.  s/Berube, Pro Se |
| 5/30/14 | ORDER, Murphy, J.  (5/23/14)<br>Pursuant to Order of 12/29/13 (AP-13-45), Court accepts this as new Petition.  Court to issue briefing schedule and re-set phone conference.<br>Copy to Petitioner and AAG Mann |
| 5/30/14 | Phone conference scheduled for June 10 at 3:00.<br>Hearing notice sent to Petitioner and AAG Mann |
| 6/10/14 | Phone conference held.  J. Murphy, Rhonda Totman-Berube and AAG Mann. |
| 6/10/14 | ORDER, Murphy, J.<br>The Court would clarify that the Petition pending in this matter pertains to two decisions of MPERS: 1) that of 10/28/13 and 2) that of 4/25/14.  MPERS has waived any objection to service of this Petition.  Record should be filed by 7/11/14.  Clerk will then issue Briefing Order in ordinary course. |
| 6/16/14 | Letter entering appearance and advising MainePERS opposes petition dated 5/23/14, filed.   s/Mann, AAG |
| 6/30/14 | Letter notifying J. Murphy of conflict of interest, with attachments, filed.<br> s/Totman-Berube, Pro Se. |
| 7/8/14 | Administrative Record, filed 7/7/14.  s/Kim Emery, Appeals Clerk |
| 7/8/14 | Notice and Briefing Schedule issued.<br>Copy to Petitioner and AAG Mann |
| 7/30/14 | ORDER, Murphy, J. (re: Letter filed by Petitioner on 6/30/14)<br>Court construes this as Motion.  State has until 8/15/14 to respond.<br>Copy to Petitioner and AAG Mann |

| 8/4/14 | Motion to Correct and Modify the Record, with attachments, filed 8/1/14. s/Berube, Pro Se |
|---|---|
| 8/5/14 | Respondent's Motion to Dismiss Suggestion of Conflict, filed. s/Mann, AAG |
| 8/7/14 | Mailed copy of Motion to Correct and Modify the Record, and attachments, to AAG Mann. |
| 8/13/14 | Petitioner's response to Respondent's Motion to Dismiss Petitioner's Conflict-of-Interest Letter, filed. s/Totman-Berube, Pro Se |
| 8/13/14 | Hearing on pending motions scheduled for 9/3/14 at 10:00. Notice of Hearing sent to Petitioner and AAG Mann |
| 8/15/14 | Brief of Petitioner, filed 8/15/14. s/Berube, Pro Se |
| 8/20/14 | Letter indicating Petitioner is not available on September 3 or September 23, filed 8/19/14. s/Totman-Berube, Pro Se |
| 8/25/14 | Respondent's Motion to Dismiss Motion to Correct and Modify Record, filed. s/Mann, AAG |
| 8/26/14 | Hearing on pending motions rescheduled to 11/5/14 at 9:00. Notice of Hearing sent to Petitioner and AAG Mann |
| 8/28/14 | Petitioner's Response to Respondent's Late-Filed Motion to Dismiss Motion to Correct and Modify Record, filed 8/27/14. s/Berube, Pro Se |
| 9/10/14 | Response to Petition for Rule 80C Review, filed 9/5/14. s/Mann, AAG |
| 9/19/14 | Petitioner's Reply Brief, filed. s/Berube, Pro Se |
| 11/5/14 | Motion hearing held, J. Murphy presiding. Appearances by Petitioner Pro Se, and AAG Mann. Tape 1965, Index 4535-5420 -Motion to Supplement the Record made orally by Petitioner. -Objection by AAG Mann. -Motion GRANTED, Murphy, J. -Supplements to Record filed in open court. Motions Under Advisement |
| 12/3/14 | ORDER, Murphy, J. (11/5/14) (re: Motion to Correct and Modify the Record) GRANTED with regards to out-of-work slips. Copy to Petitioner and AAG Mann |
| 12/3/14 | ORDER, Murphy, J. (11/5/14) (re: Respondent's Motion to Dismiss Motion to Correct and Modify Record) DENIED. See ruling this date on Motion to Correct. Copy to Petitioner and AAG Mann |

12/3/14       ORDER, Murphy, J.
Petitioner's motion to disqualify Attorney Mann is DENIED.
Copy to Petitioner and AAG Mann

1/10/15       Oral argument scheduled for 2/4/15 at 9:00 a.m.
Notice of Hearing sent to Petitioner and AAG Mann

2/4/15       Oral argument held, J. Murphy presiding. Rhonda Totman-Berube, Pro se and
Christopher Mann, AAG.
Tape 2021, Index 715-1070.
AAG Mann has until 2/9/15 to respond to Petitioner's filing during hearing.
Under advisement.

3/13/15       ORDER ON PETITIONER'S 80C APPEAL, Murphy, J. (3/12/15)
The Court denies Petitioner's 80C appeal, as well as Petitioner's motion to modify and
correct the record.
Copy to Petitioner and AAG Mann
Copy to repositories.