STATE OF MAINE
Washington, SS.

SUPERIOR COURT
Docket No. AP-20-001

Dana Maker,

          Petitioner,

           v.

Patrick C. Keliher, Commissioner
Maine Department of Marine
Resources,

          Respondent.

)
)
)
)
)
)
)
)
)
)
)
)
)
)

Decision and Order
(M.R. Civ. P. 80C)

## Introduction

Pursuant to M.R. Civ. P. 80C and the Maine Administrative Procedure Act, Petitioner Dana Maker appeals Commissioner Keliher's decision to impose a one-year suspension of his sea urchin dragger license. The suspension was based on a finding that Mr. Maker violated 12 M.R.S. § 6957(1), which prohibits the operation of a boat using a drag within 300 feet of floating aquaculture cages. Mr. Maker raises two issues on appeal. First, he argues the Department of Marine Resources (the Department) failed to prove that the prohibited area was marked as required by section 6957. Second, he advances a statutory interpretation argument, asserting that section 6957 requires the Department to demonstrate that the pertinent aquaculture lease satisfied all statutory criteria for the issuance of that lease. For the reasons below, the Commissioner's decision to suspend Mr. Maker's license is affirmed.

## Factual and Procedural Background

On December 5, 2019, Marine Patrol Officer Brian Brodie was patrolling an area near Deep Cove in Eastport, Maine. A.R. 18. He observed a boat operated by Mr. Maker dragging for sea urchins within a salmon cage aquaculture site, which was marked by a buoy system. After an additional investigation, Officer Brodie issued Mr. Maker a summons for operating a vessel using a drag within 300 feet of floating aquaculture cages in violation of 12 M.R.S. § 6957(1). A.R. 15. The Department initiated proceedings

SEP 2 '21 AM 8:39
WASHINGTON CTY CT

1

to suspend Mr. Maker's sea urchin dragger license, and Maker requested a hearing. A.R. 6, 11-13.

A hearing was held on July 30, 2020 at which Mr. Maker was represented by counsel. During the hearing, the hearing officer heard testimony from various witnesses, including Officer Brodie and Mr. Maker, and received into evidence a video and various photographic exhibits that captured Maker's conduct on the day of the incident. According to Officer Brodie, the restricted area was "marked by four yellow balls, which all ha[d] 'private property' markers on [th]em." A.R. 57. Officer Brodie watched for about 45 minutes as Mr. Maker operated his boat within those markers, engaging his drag at several points. A.R. 57-58, 65. Officer Brodie further testified he confirmed the buoy markers were 300 feet from the salmon cages by using a range finder to measure the distance between the markers and the cages. A.R. 62, 80, 88.

While Mr. Maker argued throughout the proceeding that the restricted area was not properly marked, the hearing officer rejected that argument in a written decision. A.R. 2-4. The hearing officer found that the markers were appropriately placed as to "meet the minimum requirements of the statute" and ultimately concluded that Mr. Maker committed a violation of 12 M.R.S. § 6957(1). *Id.* As a result, the Commissioner suspended Mr. Maker's sea urchin dragger license for one year. Maker appealed pursuant to M.R. Civ. P. 80C.

### Standard of Review

Judicial review of administrative agency decisions is "deferential and limited." *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128. The court is not permitted to overturn an agency's decision "unless it violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dep't of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. It reviews the agency's decisions for "'legal errors, abuse of discretion, or unsupported factual findings.'" *Anglez Behavioral Health Servs. v. HHS*, 2020 ME 26, ¶ 12, 226 A.3d 762. "In conducting such a review, [the Court] do[es] not substitute [its] judgment for that of the agency and will 'affirm findings of fact if they are supported by substantial evidence in the record.'" *Id.* "This standard of review 'does not involve any weighing of the merits of evidence.'" *Id.* Moreover, "[i]nconsistent evidence will not render an agency decision unsupported." *Seider v. Bd. of Exam'rs of*

2

*Psychologists*, 2000 ME 206, ¶ 9, 762 A.2d 551. "[I]nstead, [the Court] will vacate an agency's factual findings 'only if there is no competent evidence in the record to support' the findings." *Anglez*, 2020 ME 26, ¶ 12, 226 A.3d 762. The party seeking to vacate an agency decision bears the burden of persuasion on appeal. *Anderson v. Me. Pub. Emp. Ret. Sys.*, 2009 ME 134, ¶ 3, 985 A.2d 501.

### Discussion

*Issue I.*

Maker argues the Department failed to prove the prohibited area was marked according to statute. The court's analysis of this argument begins with section 6957(1), which provides that

> a person may not operate a vessel using drags ... to fish for or take ... sea urchins or any other marine organisms within 300 feet of any suspended culture floating cages, tray racks or other floating equipment authorized in a lease issued by the commissioner under section 6072, 6072-A or 6072-B, or a license issued under section 6072-C, *if the equipment is marked in accordance with subsection 1-A.*

12 M.R.S. § 6957(1) (emphasis added).

This statute makes clear that a person violates section 6957(1) only if the aquaculture gear is properly marked. *Id.*; *State v. Ashby*, 1999 ME 188, ¶ 6, 743 A.2d 1254. Next, subsection 1-A sets forth the requirements for marking aquaculture gear, stating that "[t]he owner of a suspended culture floating cage, tray rack or other floating equipment *shall mark the area in which a vessel is prohibited under subsection 1* with at least 4 anchors, each marked by a yellow buoy at least 2 feet in diameter." 12 M.R.S. § 6957(1-A) (emphasis added). Thus, aquaculture gear is properly marked if a minimum of four yellow buoys (at least two feet in diameter) marks "the area in which a vessel is prohibited"—that is, the buoy markers must be placed "within 300 feet of any suspended culture floating cages." 12 M.R.S. § 6957(1)-(1-A); *Ashby*, 1999 ME 188, ¶ 6, 743 A.2d 1254 (strictly construing 12 M.R.S. § 6957's marking requirements).

Here, Mr. Maker challenges the hearing officer's finding that the buoy markers were properly placed. Specifically, he argues the finding was unsupported because the Department "proved only [that the buoys] marked the corners of the [aquaculture] 'lease,'" and "[m]arking the 'lease' area is not the same as marking the 'area in which a vessel is prohibited.'" While the court

3

generally agrees that marking the perimeter of an aquaculture lease does necessarily meet the requirements of 12 M.R.S. § 6957, the court is nevertheless satisfied that competent and substantial evidence supports the hearing officer's finding. Officer Brodie testified at multiple points during the hearing that he used a range finder to confirm the markers were 300 feet from the salmon cages and thus, marked the prohibited area contemplated by statute. *See, e.g.*, A.R. 62 ("I went out later and used the range finder to see exactly how close ... the markers were to the salmon cages .... And they were all right around the hundred yard mark"); A.R. 80 ("I used a range finder to make sure [the markers were] [] 300 feet from the ... actual cages"); *see also, e.g.*, A.R. 78, 85-86, 88.

Moreover, although there was evidence that the buoys marked the area of the lease, it is possible, as the hearing officer found, for the corners of the lease to also mark the statutorily-designated boundary. And the fact that the hearing officer did not fully credit certain opposing evidence introduced by Mr. Maker, such as a Google Map image of the configuration of the salmon cages, is not a basis to overturn the challenged determination. *See Anglez*, 2020 ME 26, ¶ 12, 226 A.3d 762 (judicial review of agency action "'does not involve any weighing of the merits of evidence'"); *Seider*, 2000 ME 206, ¶ 9, 762 A.2d 551 ("[i]nconsistent evidence will not render an agency decision unsupported"). The court therefore declines to disturb the Department's finding because substantial evidence supports a determination that the markers were properly placed.

*Issue II.*

Mr. Maker further argues that section § 6957(1) requires the Department to "prove all facts needed to issue a[n] aquaculture lease." This requirement, Mr. Maker asserts, is found in the text of section 6957(1), which contemplates that the prohibitions apply when the aquaculture equipment is "authorized in a lease issued by the commissioner under section 6072, 6072-A or 6072-B." While Mr. Maker concedes there is evidence that a lease was issued, he maintains the Department failed to prove the lease complied with the applicable statutory criteria.

The court disagrees with Mr. Maker's interpretation of section 6957(1). The language of the statute is clear: The Department need only prove that a

4

"lease [was] *issued* by the commissioner" under the authority of section 6072, 6072-A, or 6072-B. 12 M.R.S. § 6957(1). There is substantial evidence in the record revealing that such a lease was issued here. *See* A.R. 41-44 (specifying that the salmon aquaculture lease was issued pursuant to the Commissioner's authority under sections 6072 and 6072-A).[1]

## Conclusion

The entry is:

The Petition for Judicial Review is DENIED, and the Commissioner's decision to suspend Mr. Maker's sea urchin dragger license is AFFIRMED.

The Clerk may incorporate this Order upon the docket by reference.

DATED: August 28, 2021

The Hon. Bruce C. Mallonee
Justice, Maine Superior Court

---

[1] Additionally, the court notes that Mr. Maker did not preserve this issue in the proceedings before the Department. This failure alone provides a basis to reject his second issue. *New England Whitewater Ctr., Inc. v. Dep't of Inland Fisheries & Wildlife*, 550 A.2d 56, 58 (Me. 1988).