STATE OF MAINE
KENNEBEC, SS.

SUPERIOR COURT
CIVIL ACTION
DOCKET NO. AUGSC-AP-2019-07

KEVIN COOKSON,

Petitioner

v.

**DECISION AND ORDER**

MAINE DEPARTMENT OF
CORRECTIONS,

Respondent.

## INTRODUCTION

The matter before the court is an appeal by Kevin Cookson, an inmate at the Mountain View Correctional Facility State Prison (MVCF), from a disciplinary proceeding that resulted in the imposition of sanctions against him for the offense of Trafficking as defined under the Prisoner Discipline Policy. This appeal has been brought in accordance with 5 M.R.S. §§ 11001-11008 (Administrative Procedure Act) and M.R. Civ. P. 80C.

## FACTUAL BACKGROUND

The following facts are taken from the Certified Record (C.R.).

On an unspecified date, an investigation into trafficking Suboxone occurred at the MVCF. (C.R. 2.) During that investigation, a phone number[1] was found in prisoner JF's pocket. (C.R. 2.) JF had recently been moved to segregation for possession of three full strips of Suboxone. (C.R. 2). The phone number was traced to Kathy Lovely, Kevin Cookson's aunt. (C.R. 2). On December 9, 2018, Cookson called his aunt Kathy and told

---

[1] 487-5737.

1

her that "F___" would call her and tell her where to send $250. (C.R. 2.) F___ is prisoner JF's nickname. (C.R. 2.) At some point thereafter, JF did contact Kathy and directed her where to send the money. (C.R. 2.) Based on that information, and other information obtained through confidential sources, Lieutenant Tyrell believed that it was highly likely that Cookson was transferring the money to JF to pay for Suboxone. (C.R. 2.)

On December 17, 2018, at 6:23 p.m., Lt. Tyrell authored the Disciplinary Incident Report (Report) which charged Cookson with Trafficking,[2] a class A violation, and Currency, Giving or Receiving,[3] a class C violation. (C.R. 2). On the same date, at 4:30 p.m. [sic], a different officer reviewed, approved, and forwarded the Report to security staff for investigation. (C.R. 3.) The Investigation took place, by yet another officer, at 8:33 p.m., when Cookson explained that the money was for gambling, that he doesn't do drugs, and that he was never tested for drugs. (C.R. 3.) On January 4, 2019, Cookson was notified of a disciplinary hearing to occur on January 7, 2019, and listed prisoner JF as his

---

[2] Maine Department of Corrections (MDOC) policy defines this violation as:

> Trafficking of a drug, regardless of whether or not prescribed to the prisoner, or possession or use of a prescription drug not prescribed to the prisoner by the facility healthcare staff, or possession or use of a non-prescribed scheduled drug of the W, X, Y classification, or related paraphernalia as defined by 17-A M.R.S.A.
> . . .

Policy 20.1, Proc. E. Suboxone (buprenorphine) is a Schedule W drug. 17-A M.R.S. § 1102(1)(I). Planning, attempt, participation as an accessory, or solicitation of another prisoner are all included in the violation. MDOC Policy 20.1, Proc. E.

[3] In relevant part, MDOC policy defines this violation as

> The giving or receiving, directly or indirectly, of . . . cash . . . between a prisoner and another prisoner . . . . The giving or receiving, directly or indirectly, of [cash] between a prisoner and the family or friend of another prisoner . . . without authorization from the Chief Administrative Officer. If it involves any of the persons above, this includes making a payment for the benefit of another person or receiving the benefit of a payment made by another person.

MDOC Policy 20.1, Proc. E.

2

only witness. (C.R. 1). At the hearing, Cookson pled not guilty to both violations. (C.R. 5.) He explained that he was not trying to bring drugs into MVCF and the $250 was for a football pool between he and prisoner JF. (C.R. 5). JF testified to the same explanation. (C.R. 5.) The Hearing Officer (HO) did not find JF reliable, so he "discount[ed] his statement." (C.R. 5.) The HO found Cookson "guilty based on the officer's report." (C.R. 5.)

The Disciplinary Hearing Summary shows that although Cookson was charged with and pled not guilty to both Trafficking and Currency, Giving or Receiving, he was only found guilty of Trafficking. (C.R. 5.) The Currency charge was not dismissed; instead it was not addressed at all. (C.R. 5-6.) Cookson was placed on thirty days of disciplinary restriction and lost thirty days of good time. (C.R.7.) On January 18, 2019, Cookson administratively appealed the HO's decision. (C.R. 9.) In his appeal, he complained of the HO's reliance on the Report, which referred to confidential sources, and stated that he was not provided with that information despite a request for it. (C.R. 9.) He contended that the HO impermissibly discounted JF's testimony without any explanation as to why he found him unreliable. (C.R. 9.) He argued that the HO dismissed the lesser violation of Currency in favor of finding him guilty of the Trafficking violation, and that insufficient evidence supported the HO's decision. (C.R. 9). Finally, he stated that the supervisor signed the Report before it was completed by Lt. Tyrell, as indicated by the handwritten times, which, he claims, is a policy violation. (C.R. 9.)

On January 24, 2019, the HO's decision was affirmed by a Designee of the Chief Administrative Officer. (C.R. 10.) This Decision on Appeal was provided to Cookson on March 1, 2019. On January 28, 2019, Cookson filed his Petition for Rule 80C review with

3

this court.[4] He raises the same issues on appeal to this court as he did in his administrative appeal.

## DISCUSSION

The Law Court has frequently reaffirmed the principle that judicial review of administrative agency decisions is "deferential and limited." *Passadumkeag Mountain Friends v. Bd. of Envtl. Prot.*, 2014 ME 116, ¶ 12, 102 A.3d 1181 (quoting *Friends of Lincoln Lakes v. Bd. of Envtl. Prot.*, 2010 ME 18, ¶ 12, 989 A.2d 1128). The court is not permitted to overturn an agency's decision "unless it: violates the Constitution or statutes; exceeds the agency's authority; is procedurally unlawful; is arbitrary or capricious; constitutes an abuse of discretion; is affected by bias or error of law; or is unsupported by the evidence in the record." *Kroger v. Dept. of Envtl. Prot.*, 2005 ME 50, ¶ 7, 870 A.2d 566. The party seeking to vacate a state agency decision has the burden of persuasion on appeal. *Anderson v. Maine Public Employees Retirement System*, 2009 ME 134, ¶ 3, 985 A.2d 501. In particular, a party seeking to overturn an agency's decision bears the burden of showing that "no competent evidence" supports it. *Stein v. Me. Crim. Justice Academy*, 2014 ME 82, ¶ 11, 95 A.3d 612.

On appeal, Cookson raises five arguments. First, he argues that the Department violated its own policies by not providing him a summary of the information the confidential source gave, as described in the Report, which the HO allegedly relied upon to make his finding of guilt. Second, he maintains that the HO's failure to address the Currency violation should invalidate the Trafficking charge, because, based on the HO's findings, the Currency violation was more substantiated. Third, he contends that the

---

[4] The Petition for Judicial Review of Agency Action is dated January 18, 2019. Neither party accounts for how Cookson could have filed his Petition before the HO's decision was affirmed, but these are the dates provided in the Record.

4

timing inconsistency in the Report being approved before it was authored gave the charging officer unfettered reign to state whatever he wanted in the Report without supervisory review. Fourth, he argues that the HO's failure to explain why he found prisoner JF not credible denied him a meaningful way to challenge the HO's findings. Finally, Cookson generally asserts that insufficient evidence supports the HO's decision because it is all circumstantial.

## I.    The Confidential Source Information

Cookson maintains that MDOC's own policies require that he be provided a summary of the information from the confidential source when it is used to support a finding of guilt against him. He argues that because the HO made his finding of guilt based on the Report, "[t]his finding inherently accepts as true the confidential information the reporting officer cited in his report to be valid and included in the Hearing Officer's rationale." Because he was not provided with a summary of the information, he asserts that he was denied a meaningful opportunity to present a defense against the allegations that the confidential source made. In response, the Department contends that the HO did not rely on any confidential information to find Cookson guilty because the HO's decision was based on the information in the officer's report, not specifically the confidential source's information. Therefore, it was not required to provide him with a summary of the information.[5]

---

[5] Cookson cites to *Quinones v. Maine Department of Corrections*, No. AP-2017-22 2017 Me. Super. LEXIS 291 (Dec. 1, 2017) to show that he should have been provided a summary of the confidential report. That case is distinguishable. There, no Suboxone was ever brought into the prison. *Id.* at *2. The Hearing Summary showed no witnesses, summary of evidence, or exhibits presented. *Id.* at *3. Despite that, the HO relied on a briefing by the SII unit, was presented with the information in SII reports, and based his guilty finding on that. *Id.* at *3-4. Although the petitioner requested the reports in that case, he was denied access because they were "confidential." *Id.* at *3. The Superior Court (Kennebec County, *Stokes J.*) specifically addressed the MDOC policy at issue and explained that the petitioner should have been provided with a summary of the SII report. *Id.* at

MDOC's Prisoner Discipline Policy on confidential information states that:

> When confidential information is necessary to support a finding of guilt, appropriate security staff . . . shall ensure that the identity of the informant, the detailed statement of the informant, and the reason(s) for relying on the informant or the information is provided to the disciplinary hearing officer prior to the hearing. . . . .
>
> A written summary of the confidential information that does not reveal the identity of the informant shall be presented at the hearing in the presence of the prisoner. The disciplinary hearing officer shall ensure that the written summary is read to the prisoner or otherwise presented at the hearing and is made part of the record of the hearing.

20.1 Procedure C(11)-(12). Because a redacted written summary of the confidential information is only required to be provided to the prisoner when "necessary to support a finding of guilt," if there was other substantial evidence in the Report, the confidential information would not be necessary, but would be superfluous. As will be discussed later in this Decision and Order, the HO's decision is supported by sufficient evidence in the record, even if it is circumstantial. Because the confidential information was not "necessary" to support a finding of guilt, the court is not convinced by Cookson's argument that he should have been provided with a summary of the information.[6]

## II.    The HO's Failure to Address the Currency Violation

The crux of Cookson's argument regarding the Currency violation is that the evidence presented at the disciplinary hearing more clearly supported a violation of the lesser charge, instead of Trafficking. Additionally, because the HO did not address the

---

*7-8. In contrast here, there is evidence of drugs brought into the prison, the HO's decision is supported by substantial other evidence in the Report, and nothing indicates that the HO was privy to the information that the confidential source provided. The other case that Cookson cites, *Grant v. Maine Department of Corrections*, No. AP-2015-15, 2016 Me. Super. LEXIS (Oct. 31, 2016) has a fact pattern similar to *Quinones* and is distinguishable for the same reasons.

[6] Better practice may be for the HO to state whether his decision rested on or considered the confidential information. It does not appear, however, that the HO even viewed the confidential information in this case.

Currency violation in any way, Cookson asserts that he was denied the right to argue on appeal to the warden that he should have been found guilty of the lesser charge instead of the more serious violation.[7] The Department maintains that despite the HO's failure to specifically address the Currency violation, it is clear that it was either dismissed or the HO found Cookson not guilty of it, because he was only found guilty of Trafficking. It further argues that the Currency violation would be expunged from his record per MDOC Policy since he was not found guilty of it. Finally, it points out that the violations involve separate definitions and elements, meaning that the HO was not required to find Cookson guilty or not guilty of one as a result of his finding on the other.

Cookson's argument is without merit. Based on this court's review of the record, it appears that Cookson could have been found guilty of both offenses. Had that occurred, he would not have been in any better position to appeal to the Chief Administrative Officer. In the same vein, if he had been found guilty of the Currency violation, his argument to the Chief Administrative Officer would have been that the HO should have ignored circumstantial evidence surrounding the Trafficking violation, and only found him guilty of the lesser violation which was supported by direct evidence. However, a HO is required to find guilt by a standard of whether "it is more probable than not that the prisoner committed the violation." Policy 20.1. Proc. C(13). Nothing in MDOC Policy limits an HO to consideration of direct evidence only, or prohibits him from considering circumstantial evidence. Moreover, Cookson made this very argument to the Chief

---

[7] Cookson also argues that the Department did not adhere to its own policy because it did not address the Currency charge. MDOC Policy states that "[u]pon completion of the hearing, the disciplinary hearing officer shall determine guilt or innocence for any charge not dismissed." 20.1 Proc. C(13). While this does appear to be a technical violation, it is not a substantive violation. Cookson was only disciplined for the Trafficking violation, not both.

7

Administrative Officer in his administrative appeal.[8] Cookson has not met his burden to show that the HO acted arbitrarily or that he was denied due process because of the HO's failure to address the Currency violation.

### III. Timing inconsistencies in the Report and its Review and Approval

Cookson alleges that because the handwritten times show that the Disciplinary Incident Report was authored at 4:23 p.m., but reviewed and approved to be sent for investigation at 2:30 p.m., the legitimacy, integrity, and appropriateness of the Report is called into question, and no meaningful review or investigation could have occurred. He maintains that this is a violation of the protections afforded to him by the MDOC Prisoner Discipline Policy.

The Department concedes the time discrepancy in the record, but it points out that the incident time listed on the Report is 3:37 p.m., roughly an hour before the supervisor's approval, which lends support for the notion that the 2:30 p.m. approval is merely an error. It argues that the timing discrepancy had no impact on the HO's decision.

Cookson makes bold allegations, none of which are supported by the record. Tellingly, in his briefing, Cookson admits to the Currency violation, and takes no issue with the accuracy of the statement that he gave to the officer conducting the investigation, which he signed and dated. Because Cookson has not shown any substantive due process violation, or that the legitimacy, integrity, or appropriateness of the hearing process was called into question because of the supervisor's 2:30 p.m. [sic] approval, the court will not disturb the HO's decision based on this argument.

---

[8] In that appeal, Cookson wrote that "the Hearing Officer accepts as truth that money was sent in which in and of itself proves 'currency' as a charge but he dismissed that in favor of trafficking [with] no evidence to support this charge." (C.R. 9.)

8

## IV.     The HO's Discounting of JF's Testimony

Next, Cookson takes issue with the HO's determination that he did not find JF reliable, because it rendered his defense "meaningless and unworthy to pursue." He contends that the HO should have provided insight into exactly why he found JF unreliable, because MDOC Policy requires the HO to explain in his findings why he reached the conclusions that he did. The Department contends that credibility determinations and the amount of weight to give the evidence are properly within the discretion of the fact-finder, in this case, the HO.

It is a well-established tenet that fact-finders are in the best position to make credibility determinations and take them into account when weighing the evidence. The Law Court has made clear that hearing officers have the authority to weigh the evidence, and a reviewing court sitting in an appellate capacity is not to substitute its judgment for that of the hearing officers. *Jalbert v. Me. Pub. Emples. Ret. Sys.*, 2017 ME 69, ¶ 12, 158 A.3d 940. Moreover, despite Cookson's arguments, MDOC Policy only requires that "[t]he prisoner shall be advised of the [HO's] decision and the basis for it," Proc. C(15), and that the HO prepare a "statement of the reason(s) and evidence relied on for the decision," *id.* Cookson did not provide, and the court's independent research did not uncover, any policy requiring a hearing officer to explain the specific reasons why he found a witness not credible.

Here, the HO complied with Policy requirements when he explained that he did not consider JF's testimony reliable.[9] He was not required to explain exactly why he did

---

[9] In his briefs, Cookson concedes that the HO was "technically" in compliance with the spirit of MDOC Policy, which weakens his arguments, if it does not entirely waive them.

not find JF reliable. Cookson has not met his burden to show that the HO acted arbitrarily or contrary to MDOC Policy.

### V.     Sufficiency of the Evidence

Finally, Cookson challenges the sufficiency of the evidence supporting the HO's decision. He alleges that he put forth a plausible explanation that the money was for a football pool, the HO did not cite any contrary evidence, and the evidence the HO relied on was "largely circumstantial evidence not conclusively proven."

Although the sequence of events in the Disciplinary Incident Report could be clearer, the record reflects that there was an investigation into Suboxone trafficking at MVCF. When JF was moved into segregation for possession of three full strips of Suboxone (which was preserved as physical evidence) a phone number was found in his pocket. This phone number was traced to Cookson's aunt. Cookson had called his aunt and told her that someone by the nickname of F___ would call her and tell her where to send $250. F___ is JF's nickname, and he did in fact call her and tell her where to send $250. Although no Suboxone was found in Cookson's possession, because Suboxone was found in JF's possession and both acknowledged the arrangement to transfer the funds, it is a reasonable inference that the money transfer was for Suboxone, and not for a football pool. Since planning, attempt, participation as an accessory, or solicitation of another prisoner are all included in a Trafficking violation, the above evidence supports a guilty finding. Cookson has not met his burden to show that the HO's decision was not supported by competent evidence in the record.

### CONCLUSION

The entry is:

The Petition for Judicial Review is DENIED.

10

The clerk is directed to incorporate this Order by reference in the docket in accordance with M.R. Civ. P. 79(a).

DATED: July 15, 2019

William R. Stokes
Justice, Maine Superior Court

11